No. 25-3727

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————————

GAVIN NEWSOM, in his official capacity as Governor of the State of California, STATE OF CALIFORNIA,

*Plaintiffs-Appellees,*

DONALD J. TRUMP, in his official capacity as President of the United States, PETE HEGSETH, in his official capacity as Secretary of the Department of Defense, DEPARTMENT OF DEFENSE,

*Defendants-Appellants.*

———————————————————

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:25-cv-04870-CRB | Hon. Charles R. Breyer

———————————————————

## BRIEF OF *AMICI CURIAE* FORMER U.S. ARMY AND NAVY SECRETARIES AND RETIRED FOUR-STAR ADMIRALS AND GENERALS

———————————————————

Beau Tremitiere
Kristy Parker*
PROTECT DEMOCRACY UNITED
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
(202) 579-4582
beau.tremitiere@protectdemocracy.org
kristy.parker@protectdemocracy.org

Mack E. Jenkins
*Counsel of Record*
Matthew J. Craig
Susan Har
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
(212) 763-0883
mjenkins@heckerfink.com
mcraig@heckerfink.com
shar@heckerfink.com

*Attorneys for* Amici Curiae *Former U.S. U.S. Army and Navy Secretaries and Retired Four-Star Admirals and Generals*

# TABLE OF CONTENTS

Page(s)

IDENTITY AND INTEREST OF AMICI CURIAE.......................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 5

ARGUMENT ................................................................................................................ 7

   I.   Deploying Military Personnel for Domestic Law Enforcement Diverts
Them from Their Primary Mission........................................................................ 7

   II.   National Guard Personnel and Active-Duty Marines Are Not Trained or
Qualified to Operate in the Context of Domestic Law Enforcement............. 10

   III.   Deploying Military Personnel for Assistance with Law Enforcement
Operations Should Be a Last Resort to Avoid Politicizing the Military ........ 12

   CONCLUSION ..................................................................................................... 15

i

## TABLE OF AUTHORITIES

**STATUTES**                                                                 Page(s)

10 U.S.C. § 253 ..................................................................................................5

10 U.S.C. § 502 ................................................................................................13

18 U.S.C. § 1385 ...............................................................................................5

**OTHER AUTHORITIES**

*About the Guard: How We Began*, Nat'l Guard,
      https://www.nationalguard.mil/About-the-Guard/How-We-Began (last
      visited June 11, 2025)...........................................................................8

*Active Duty Military Strength by Service*, Def. Manpower Data Ctr. (Apr. 30,
      2025), https://dwp.dmdc.osd.mil/dwp/app/dod-data-reports/workforce-
      reports ....................................................................................................8

Alexandra Hutzler, *'Acts of a Dictator': Newsom Lashes Out at Trump After
      Arrest Threat*, ABC News (June 9, 2025, 3:12 PM),
      https://abcnews.go.com/Politics/war-words-trump-newsom-la-protests-
      escalates-arrest/story?id=122662589 ...............................................14

Brian Melley, Associated Press, *LA Protests far different from '92 Rodney King
      riots*, ABCNEWS.com (Jun. 10, 2025),
      https://abcnews.go.com/US/wireStory/la-protests-92-rodney-king-riots-
      122698366 ...........................................................................................13

*Brief Histories*, U.S. Marine Corps, https://www.usmcu.edu/Research/Marine-
      Corps-History-Division/Brief-Histories (last visited June 11, 2025) ...............8

Elizabeth Goitein, *"The Insurrection Act" by Any Other Name: Unpacking
      Trump's Memorandum  Authorizing Domestic Deployment of the Military*,
      Just Security (June 10, 2025),
      https://www.justsecurity.org/114282/memorandum-national-guard-los-
      angeles/ ..................................................................................................5

Informational Hearing – Changing Landscape of Veterans Benefits in California, California State Assembly (March 25, 2025), https://amva.assembly.ca.gov/system/files/2025-03/background-march-25-hearing-on-veterans-benefits-final.pdf..................................................................9

Konstantin Toropin & Steve Benyon, *Bragg Soldiers Who Cheered Trump's Political Attacks While in Uniform Were Checked for Allegiance, Appearance*, Military.com (June 11, 2025, 5:50 PM EDT), https://www.military.com/daily-news/2025/06/11/bragg-soldiers-who-cheered-trumps-political-attacks-while-uniform-were-checked-allegiance-appearance.html.......................................................................................14

Memorandum from President Donald J. Trump to Attorney General Pam Bondi and Secretary of Homeland Security Kristi Noem, Security for the Protection of Department of Homeland Security Functions (June 7, 2025), https://www.whitehouse.gov/presidential-actions/2025/06/department-of-defense-security-for-the-protection-of-department-of-homeland-security-functions ...........................................................................................11

*Our History*, Army Nat'l Guard, https://nationalguard.com/guard-history (last visited June 11, 2025)...................................................................................8

*The Corps*, U.S. Marine Corps, https://www.marines.mil/The-Corps (last visited June 11, 2025) ..............................................................................7

Times Radio, *LIVE: U.S. Major General Scott Sherman Talks About Deployment of Marines to L.A.*, at 4:45 (June 11, 2025), https://www.youtube.com/watch?v=Vo1ep-vn8iY .........................................11

*Troops in Los Angeles Can Detain but Not Arrest Individuals, Military Official Says*, Reuters (June 11, 2025, 12:35 PM EDT), https://www.reuters.com/world/us/troops-los-angeles-can-temporarily-detain-individuals-no-arrest-authorities-2025-06-11 .......................................10

*Trump Warns Protests at Military Parade Will Be Met With Force*, Reuters (June 11, 2025), https://www.reuters.com/world/us/trump-warns-protests-army-parade-will-be-met-with-very-big-force-2025-06-10 ............................15

U.S. Dep't of Def., Directive 1344.10, Political Activities by Members of the
    Armed Forces 3 (2008),
    https://www.fvap.gov/uploads/FVAP/Policies/doddirective134410.pdf ........12

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amici* are former secretaries of the U.S. Army and Navy and retired four-star admirals and generals. Collectively, they served under each president from John F. Kennedy to Barack H. Obama.

*Amici* are acutely interested in this case because deploying National Guard and active-duty military personnel in the context of domestic law enforcement should be a rare and carefully considered occurrence that strictly complies with the Posse Comitatus Act and its exceptions. Domestic deployments that fail to adhere to these long-established guardrails threaten the Guard's and the active-duty military's core national security and disaster relief missions; place deployed personnel in uncommon situations for which they lack appropriate training, thus posing safety concerns for personnel and the public alike; and risk inappropriately politicizing the military, leading to additional risks to recruitment, retention, morale, and cohesion of the force.

This submission is based on *amici*'s collective experience serving in and leading our military, their direct experience commanding active-duty service

---

[1] As required by Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* provide this statement: no counsel for a party authored this brief in whole or in part. No person other than *amici* or their counsel made a monetary contribution to this brief's preparation or submission.

personnel, and their interest in preserving our military's apolitical role in safeguarding national security.

*Amici*'s short biographies listed below capture a measure of their distinguished service to our country, as well as their expertise on matters encompassing the mission of the National Guard and armed services and the well-being of all those who serve in uniform.

**Admiral Steve Abbot, United States Navy (Retired),** graduated from the U.S. Naval Academy in 1966, after which he was deployed to Vietnam and began a 34-year career with the U.S. Navy. His final active-duty tour was as Deputy Commander-in-Chief, U.S. European Command from 1998 to 2000. Following his retirement, Admiral Abbot served as Deputy Homeland Security Advisor to President George W. Bush from 2001 to 2003.

**Admiral Thad Allen, United States Coast Guard (Retired),** retired in 2010 as the 23rd Commandant of the U.S. Coast Guard. Admiral Allen led the federal responses to Hurricanes Katrina and Rita and the Deepwater Horizon oil spill. He led Atlantic Coast Guard forces in response to the 9/11 attacks and coordinated the Coast Guard response to the Haitian Earthquake of 2010.

**Former Secretary of the Army Louis Caldera** graduated from the U.S. Military Academy at West Point and served in the Army on active duty from 1978 to 1983. He served in two Senate-confirmed positions in the Clinton Administration,

including Secretary of the Army, and as an Assistant to the President and Director of the White House Military Office in the Obama Administration.

**General Carlton W. Fulford, Jr., United States Marine Corps (Retired),** received his commission in June 1966, following graduation from the U.S. Naval Academy. He served as a platoon and company commander in Vietnam. Over the next four decades, he served as Commanding Officer, Task Force Ripper during Operations Desert Shield and Desert Storm; Commanding General, First Marine Expeditionary Force; Commanding General, Third Marine Expeditionary Force; Commander, U.S. Marine Forces Pacific; and Director, The Joint Staff. General Fulford retired as the Deputy Commander-in-Chief, United States European Command in 2002.

**General Michael Hayden, United States Air Force (Retired),** entered active military service in 1969. During his career, he rose to the rank of four-star general and served as Director of the Central Intelligence Agency and the National Security Agency. General Hayden also served as Commander of the Air Intelligence Agency and held senior staff positions at the Pentagon, Headquarters U.S. European Command, and the National Security Council.

**Admiral Samuel Jones Locklear, III, United States Navy (Retired),** graduated from the U.S. Naval Academy in 1977. He served for 39 years and retired as commander of U.S. Pacific Command. His prior commands include Commander,

3

U.S. Naval Forces Europe, U.S. Naval Forces Africa, and Allied Joint Force Command Naples; Commander, U.S. 3rd Fleet; and Commander, Nimitz Strike Group.

**Former Secretary of the Navy Sean O'Keefe** began his public service career in 1978 at the Department of Defense and as U.S. Senate staff until his appointment as the Department of Defense Comptroller and Chief Finance Officer in 1989. President George H.W. Bush later named him the 69th Secretary of the Navy. Secretary O'Keefe also served in President George W. Bush's Administration as Deputy Director of the Office of Management and Budget and the 10th Administrator of NASA.

**Admiral Bill Owens, United States Navy (Retired),** retired in 1996 as the Vice Chairman of the Joint Chiefs of Staff. He began his career as a nuclear submariner, spending a total of 4,000 days—or more than ten years—aboard submarines, including duty in Vietnam. Admiral Owens was a senior military assistant to two Secretaries of Defense and served as commander of the U.S. 6th Fleet during Operation Desert Storm.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The United States military is not primarily a law enforcement organization and is prohibited by law from acting as a domestic police force unless doing so is "expressly authorized by the Constitution or Act of Congress."[2] The Insurrection Act, which President Trump has notably *not* invoked in relation to the events that underlie this lawsuit, gives limited authority to the president to deploy federal troops to quell "any insurrection, domestic violence, unlawful combination, or conspiracy" against the United States government and to execute federal civil rights laws when they are obstructed.[3] That authority has been used sparingly throughout this country's history, and rightfully so in a democracy governed by civilians elected by the American people.

Indeed, past deployments of federal troops for domestic law enforcement purposes have responded to extreme circumstances where state governors have openly defied federal authority or where state officials have sought federal assistance. Those circumstances include President Dwight D. Eisenhower's

---

[2] Posse Comitatus Act, 18 U.S.C. § 1385.

[3] 10 U.S.C. § 253. For background on the Insurrection Act, *see generally* Elizabeth Goitein, *"The Insurrection Act" by Any Other Name: Unpacking Trump's Memorandum Authorizing Domestic Deployment of the Military*, JUST SECURITY (June 10, 2025), https://www.justsecurity.org/114282/memorandum-national-guard-los-angeles/ (last visited June 11, 2025).

federalization of National Guard troops to enforce the Supreme Court's order in *Brown v. Board of Education* to desegregate schools; President Lyndon B. Johnson's federalization of Guard troops to protect civil rights marchers in Selma, Alabama; and President George H.W. Bush's federalization of Guard troops—upon California Governor Pete Wilson's request—to quell the widespread Los Angeles riots in 1992.

In recent days, President Trump has federalized 2,000 California National Guard troops and deployed them, along with 700 active-duty Marines, to Los Angeles in response to civilian protests against actions by federal immigration enforcement agents. He has done so without invoking the Insurrection Act or otherwise narrowly defining the troops' mission. The governor of California and mayor of Los Angeles have objected to this deployment, and the Los Angeles Police Department has expressly represented that it is capable of controlling the protests without federal intervention.

Deployment under these circumstances[4] poses multiple risks to the core mission of the National Guard and the Marines, and to the well-being of the troops. *First*, deploying military personnel in the context of domestic law enforcement

---

[4] This brief was prepared prior to the military parade and nationwide protests scheduled for June 14, 2025, and any events that occurred in their aftermath. However, those events do not alter *amici's* position on the risks that should be considered in, and caution that should accompany, any federalization or domestic deployment of troops.

6

diverts them from their primary mission, which is national security and disaster response, at the expense of local, state, and national safety. *Second,* National Guard personnel and active-duty Marines are not trained or qualified to conduct domestic law enforcement operations, which poses a danger to the safety of both the troops and the public. *Third,* the use of federal military personnel in the context of law enforcement operations should be a last resort to avoid the politicization of the military, which inevitably erodes public trust, impacts recruitment, and undermines troop morale.

*Amici* submit this brief to more fully explain these risks and assist the Court in its disposition of the pending motion.

## ARGUMENT

### I. Deploying Military Personnel for Domestic Law Enforcement Diverts Them from Their Primary Mission

Both the United States Marine Corps ("USMC") and the National Guard play critical roles in protecting national security. USMC is "America's expeditionary force in readiness," prepared to respond rapidly to threats against the nation with "innovative and agile warfighting capabilities in all domains."[5] As one of the six armed forces of the United States, USMC serves as the maritime land force

---

[5] *The Corps*, U.S. MARINE CORPS, https://www.marines.mil/The-Corps (last visited June 11, 2025).

7

component of the U.S. military and has approximately 167,000 active-duty members.[6] Marines are primarily trained for overseas conflict zones and have fought in every major international U.S. conflict since their founding in 1775.[7] Domestic deployment of USMC is extremely rare and typically occurs under extraordinary circumstances, with the vast majority of USMC operations conducted overseas.

The National Guard, founded in 1636 as a citizen-soldier force, has a dual mission: (1) to serve as a reserve component of the active-duty military, and (2) to protect life and property within communities at home.[8] The Guard primarily provides domestic civil support, natural disaster relief, border security, election support, and other support as requested by governors and/or the president, including law enforcement support in the event of civil unrest. However, the "civil unrest" response component has historically been narrowly limited, especially in situations calling for the performance of core law enforcement functions, which the Guard is neither trained nor primarily intended to execute. The Guard is unique within the

---

[6] *Active Duty Military Strength by Service*, DEF. MANPOWER DATA CTR. (Apr. 30, 2025), https://dwp.dmdc.osd.mil/dwp/app/dod-data-reports/workforce-reports (select "Strength Summary") (last visited June 11, 2025).
[7] *Brief Histories*, U.S. MARINE CORPS, https://www.usmcu.edu/Research/Marine-Corps-History-Division/Brief-Histories (last visited June 11, 2025).
[8] *About the Guard: How We Began*, NAT'L GUARD, https://www.nationalguard.mil/About-the-Guard/How-We-Began (last visited June 11, 2025); *Our History*, ARMY NAT'L GUARD, https://nationalguard.com/guard-history (last visited June 11, 2025).

8

U.S. military as a dual-status force with both state and federal responsibilities, allowing it to be activated under the authority of either state or federal leadership, pursuant to strict limitations set forth in federal law.

The California National Guard (which is part of the National Guard) is vital to the state's disaster preparedness and emergency response. As one of the largest National Guard forces in the country—with more than 18,000 troops[9]—it serves California's population of 39 million people, providing essential support during crises. The California National Guard is routinely deployed for wildfire suppression, search and rescue, and emergency response during earthquakes, floods, and other natural disasters.

California relies heavily on its Guard's rapid response capabilities, particularly during wildfire season, which begins in June and brings the risk of fast-moving, large-scale fires. The diversion of California Guard personnel away from these critical state missions risks degrading the state's emergency preparedness. Notably, the California Guard has spent months engaged in wildfire response and

---

[9] INFORMATIONAL HEARING – CHANGING LANDSCAPE OF VETERANS BENEFITS IN CALIFORNIA, CALIFORNIA STATE ASSEMBLY (March 25, 2025), https://amva.assembly.ca.gov/system/files/2025-03/background-march-25-hearing-on-veterans-benefits-final.pdf.

recovery operations resulting from the catastrophic January 2025 fires in the Los Angeles area.

## II. National Guard Personnel and Active-Duty Marines Are Not Trained or Qualified to Operate in the Context of Domestic Law Enforcement

The National Guard and USMC personnel currently deployed in and around Los Angeles likely have and, according to public reports, will receive limited instruction and training on how to handle civil disturbances. And any training that they do receive pales in comparison to the in-depth and ongoing education provided to domestic law enforcement officers.[10] Domestic law enforcement—particularly in emotionally charged situations and instances of civil unrest—is a specialized skill set for which law enforcement officers train extensively and continually. Personnel in the U.S. military, on the other hand, do not receive extensive training on how to operate safely and effectively in the context of domestic law enforcement. Our longstanding tradition of entrusting domestic law enforcement to local, state, and

---

[10] *Troops in Los Angeles Can Detain but Not Arrest Individuals, Military Official Says*, REUTERS (June 11, 2025, 12:35 PM EDT), https://www.reuters.com/world/us/troops-los-angeles-can-temporarily-detain-individuals-no-arrest-authorities-2025-06-11 (last visited June 11, 2025).

10

federal law enforcement personnel has, unlike other countries around the world, allowed the U.S. military to remain focused on its core mission.

The President's authorization to federalize the National Guard and deploy the regular Armed Forces states that they will be used "to temporarily protect ICE and other United States Government personnel who are performing Federal functions, including the enforcement of Federal law, and to protect Federal property."[11] The commanding officer of the National Guard deployment, U.S. Army Major General Scott Sherman, has stated, "These soldiers do not conduct law enforcement operations like arrests or search and seizure. They are strictly used for the protection of the federal personnel as they conduct their operations and to protect them to allow them to do their federal mission."[12]

In practice, the distinction between force protection and law enforcement operations is not always clear, as modern operational realities and unanticipated circumstances invite uncertainty and potential disagreement over the scope and

---

[11] Memorandum from President Donald J. Trump to Attorney General Pam Bondi and Secretary of Homeland Security Kristi Noem, Security for the Protection of Department of Homeland Security Functions (June 7, 2025), https://www.whitehouse.gov/presidential-actions/2025/06/department-of-defense-security-for-the-protection-of-department-of-homeland-security-functions (last visited June 11, 2025).

[12] TIMES RADIO, *LIVE: U.S. Major General Scott Sherman Talks About Deployment of Marines to L.A.*, at 4:45 (June 11, 2025), https://www.youtube.com/watch?v=Vo1ep-vn8iY.

nature of appropriate and authorized conduct. These ambiguities risk miscalculations in the heat of the moment, especially among military personnel who have not received thorough training in de-escalation tactics and the intricacies of the constitutional protections afforded to civilians in the U.S. In the absence of clear, detailed guidance consistent with settled legal principles, these troops are placed in an operationally difficult position if ordered to act against their fellow Americans. *Amici* are concerned that service members deployed on these missions are not being set up for success, with potentially grave risk of irreparable harm.

### III. Deploying Military Personnel for Assistance with Law Enforcement Operations Should Be a Last Resort to Avoid Politicizing the Military

A bedrock principle of American democracy is that our military is apolitical. Accordingly, U.S. military personnel are not permitted to engage in political conduct while on duty or to use their military status to endorse political candidates or political causes.[13] Critical to the military's ability to carry out its core functions is retaining the public's respect and maintaining cohesion and unity within its ranks—regardless of the political leanings of individual citizens or soldiers. Particular caution is therefore necessary if the U.S. military is to be deployed domestically in the context of a politically charged situation. This is especially so in situations that involve

---

[13] U.S. DEP'T OF DEF., DIRECTIVE 1344.10, POLITICAL ACTIVITIES BY MEMBERS OF THE ARMED FORCES 3 (2008), https://www.fvap.gov/uploads/FVAP/Policies/doddirective134410.pdf.

12

political protests and citizens exercising their First Amendment rights, which members of the United States armed forces are sworn to uphold.[14] It is essential that such deployments be a last resort, especially in the context of policing protests and other constitutionally protected speech and activities.

For that reason, and as noted above, federal deployments on U.S. soil have been rare, serious, and legally clear. The last major deployment of federal troops domestically occurred during the 1992 Los Angeles riots, at the request of California Governor Pete Wilson and pursuant to the Insurrection Act. That deployment was prompted by widespread violence and looting of businesses, the burning of entire blocks of homes and businesses, and dozens of civilian fatalities. By contrast, recent public reporting from Los Angeles suggests that, notwithstanding troubling incidents of property damage and violence, the recent and ongoing situation appears to be different in kind. Prior to the introduction of federal troops and for the week thereafter, there were no reported deaths, protest activity appeared largely confined to several discrete areas, and the number of arrests had been limited and for mostly low-level offenses.[15]

---

[14] *See* 10 U.S.C. § 502 (Armed Forces enlistment oath stating "I will support and defend the Constitution of the United States against all enemies foreign and domestic" and "I will bear true faith and allegiance to the same.").

[15] Brian Melley, Associated Press, *LA Protests far different from '92 Rodney King riots*, ABCNEWS.com (Jun. 10, 2025), https://abcnews.go.com/US/wireStory/la-protests-92-rodney-king-riots-122698366 (last visited June 11, 2025).

13

As also noted above, deployments over the objections of state officials have been even more rare and occurred in situations where state and local officials openly defied court orders or refused to protect citizens exercising their constitutional rights. Yet here, the Los Angeles Police Department and the state of California have not asked for outside assistance to control the protests and have suggested that the deployment of military troops would be more likely to escalate, rather than lessen, the public safety risk.

The risks of politicization under these circumstances are profound and not speculative, especially where the President has, in his official capacity, overtly pitted the military against his professed political opponents. President Trump has suggested the governor of California, to whom he refers by a derogatory name, should be arrested, calling his "primary crime" as "running for governor."[16] In a recent speech before U.S. Army personnel at Fort Bragg, President Trump repeatedly referred to the Los Angeles protests and denounced the governor, while encouraging service personnel to cheer as if at a political rally.[17] Speaking about a

---

[16] Alexandra Hutzler, *'Acts of a Dictator': Newsom Lashes Out at Trump After Arrest Threat*, ABC NEWS (June 9, 2025, 3:12 PM), https://abcnews.go.com/Politics/war-words-trump-newsom-la-protests-escalates-arrest/story?id=122662589 (last visited June 11, 2025).

[17] Konstantin Toropin & Steve Benyon, *Bragg Soldiers Who Cheered Trump's Political Attacks While in Uniform Were Checked for Allegiance, Appearance*, MILITARY.COM (June 11, 2025, 5:50 PM EDT), https://www.military.com/daily-news/2025/06/11/bragg-soldiers-who-cheered-trumps-political-attacks-while-

14

military parade to be held in observance of the Army's 250th birthday, President Trump said, "For those people that want to protest, they're going to be met with very big force."[18]

While the President is entitled to criticize his opponents in political terms, involving the military in domestic political controversies risks harming the military's ability to recruit and retain servicemembers and garner broad public support for its budgets and programs, therefore undermining its ability to achieve its core mission of protecting the nation. It is precisely for this reason that the military should be kept out of domestic law enforcement whenever possible.

### CONCLUSION

The active-duty military and National Guard serve a critical role in U.S. national security. Domestic deployments that fail to adhere to exacting legal requirements and long-established guardrails threaten their core national security and disaster relief missions, put the military at risk of politicization, and pose serious risks to both servicemembers and civilians. We appreciate the Court's due

---

uniform-were-checked-allegiance-appearance.html (reporting on the event and the aftermath, and noting "no fat soldiers" were allowed to attend and soldiers who disagree with the current administration were instructed not to attend).

[18] *Trump Warns Protests at Military Parade Will Be Met With Force*, REUTERS (June 11, 2025), https://www.reuters.com/world/us/trump-warns-protests-army-parade-will-be-met-with-very-big-force-2025-06-10 (last visited June 11, 2025).

15

consideration of these critical factors in adjudicating Appellants' Emergency Motion

for Stay Pending Appeal.

Dated: June 15, 2025                                  Respectfully submitted,
       Los Angeles, CA

Beau Tremitiere                                        */s/ Mack E. Jenkins*           
Kristy Parker*                                         Mack E. Jenkins
PROTECT DEMOCRACY UNITED                                   *Counsel of Record*
2020 Pennsylvania Ave. NW, Suite 163                   Matthew J. Craig
Washington, DC 20006                                   Susan Har
(202) 579-4582                                         HECKER FINK LLP
beau.tremitiere@protectdemocracy.org                   1150 South Olive Street, Suite 10-140
kristy.parker@protectdemocracy.org                     Los Angeles, CA 90015
                                                       (212) 763-0883
*Application for admission pending*                    mjenkins@heckerfink.com
                                                       mcraig@heckerfink.com
                                                       shar@heckerfink.com

*Attorneys for* Amici Curiae *Former U.S. Army and Navy Secretaries and Retired Four-Star Admirals and Generals*

16

## CERTIFICATE OF SERVICE

I, Mack E. Jenkins, hereby certify that on June 15, 2025, I electronically filed the foregoing Brief of *Amici Curiae*, Former U.S. Army and Navy Secretaries and Retired Four-Star Admirals and Generals, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

Dated: June 15, 2025

*/s/ Mack E. Jenkins*
Mack E. Jenkins

*Attorney for Amici Curiae Former U.S. Army and Navy Secretaries and Retired Four-Star Admirals and Generals*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 25-3727 |

I am the attorney or self-represented party.

**This brief contains** | 3,191 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated |          |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** |                          | **Date** |                    |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*