No. 25–3727

# In the United States Court of Appeals for the Ninth Circuit

---

GAVIN NEWSOM, *et al.*,

*Plaintiffs-Appellees,*

*v.*

DONALD J. TRUMP, *et al.*,

*Defendants-Appellants.*

---

On Appeal from the United States District Court, for the
Northern District of California, Case No. 25-cv-04870-CRB
Hon. Charles R. Breyer, Judge

---

**CORRECTED BRIEF OF *AMICI CURIAE* LOCAL GOVERNMENTS AND
LOCAL GOVERNMENT LEADERS IN SUPPORT OF APPELLEES'
OPPOSITION TO APPELLANTS' EMERGENCY MOTION TO STAY
PENDING APPEAL**

---

S.F. CITY ATTORNEY'S OFFICE
DAVID CHIU, SBN 189542
YVONNE R. MERÉ, SBN 175394
MOLLIE M. LEE, SBN 251404
SARA J. EISENBERG, SBN 269303
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone: (415) 355-3308

*Attorneys for Amicus Curiae City and
County of San Francisco*

PUBLIC RIGHTS PROJECT
JENNY MA
JONATHAN MILLER
ALEXANDRA KLIGER
490 43rd Street, #115
Oakland, CA 94609
Telephone: (510) 738-6788

*Attorneys for Amicus Curiae Listed in
Appendix*

[counsel continued on next page]

KEKER, VAN NEST & PETERS LLP
CODY S. HARRIS, #255302
SOPHIE HOOD, #295881
ANJALI SRINIVASAN, #304413
IAN KANIG, #295623
CARA R. MEYER, #348877
ELIANE HOLMUND, #348883
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

*Attorneys for Amicus Curiae City of
Chicago, County of Santa Clara, City
of Alameda, City of Santa Monica*

Additional Counsel on Signature Page

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST.................................................................1

SUMMARY OF ARGUMENT ...............................................................2

ARGUMENT ......................................................................................4

I.  APPELLANTS' DEPLOYMENT OF MILITARY
    FORCES TO MANAGE DOMESTIC PROTESTS,
    WITHOUT REQUEST FROM LOCAL OR STATE
    AUTHORITIES, SEVERELY HARMS THE PUBLIC
    INTEREST.....................................................................................4

    A.  Local law enforcement are better equipped to
        manage public demonstrations, even if they
        become violent......................................................................6

    B.  Deploying the military for policing purposes
        without coordinating with local law enforcement
        decreases policing efficacy and undermines
        chains of command. ............................................................12

CONCLUSION ..................................................................................14

FORM 17. STATEMENT OF RELATED CASES PURSUANT
    TO CIRCUIT RULE 28-2.6........................................................24

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS.............25

CERTIFICATE OF SERVICE..............................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Doe #1 v. Trump,*
 957 F.3d 1050 (9th Cir. 2020)................................................................. 4

*Golden Gate Restaurant Ass'n v. City and Cnty. of San Francisco,*
 512 F.3d 1112 (9th Cir. 2008)................................................................. 5

*Grider v. Abramson,*
 180 F.3d 739 (6th Cir. 1999)................................................................. 8

*Laird v. Tatum,*
 408 U.S. 1 (1972)................................................................................. 5

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
 567 U.S. 519 (2012).............................................................................. 6

*Nken v. Holder,*
 556 U.S. 418 (2009)........................................................................ 4, 5

## State Statutes

Cal. Gov't Code § 7072............................................................................. 11

Mass. Gen. Laws, Chapter 40 § 4J .......................................................... 13

Rev. Stat. Mo. § 44.090-44.098 (Kansas City)......................................... 13

## Rules

Fed. R. Civ. P. 29(a)(2) ............................................................................. 2

## Regulations

San Francisco Police Department General Order 8.03.......................... 7, 8

## Other Authorities

*Body Worn Cameras*, Chicago Police Dep't (Dec. 1, 2023), available online at: https://tinyurl.com/bdh87p97 .............................. 10

Cal. Assembly Bill 481 (2021), Leg. Counsel's Digest, available online at https://tinyurl.com/3y9bpsdc .............................. 11

California Governor's Off. of Emergency Servs., *Mutual Aid*, available online at: https://tinyurl.com/359x65ec .............................. 13

City of New Haven, *Statement by Mayor Elicker on Yale University Students Protests and Successful De-escalation by the New Haven Police Department* (Apr. 23, 2024), available online at: https://tinyurl.com/6cen9s3n .................... 9

*Community Engagement Division (CED)*, SFPD, available online at: https://tinyurl.com/3udxvkfd ................................ 8

*Community Police Review Agency,* City of Oakland, available online at: https://tinyurl.com/yvppt243 ................................ 8

*Demonstrations and Assemblies*, City of Madison Police Dep't (Feb. 3, 2025), available online at: tinyurl.com/2ckczn6a ................................................. 8

*Demonstrations and Political Violence in America: New Data for Summer 2020*, ACLED (Sept. 3, 2020), available online at: https://tinyurl.com/ymzvjdxd ................................ 6

LAPD News Release (June 9, 2025), available online at: https://t.ly/_U7vP ................................................. 13

*Mayor Lucas Announces Significant KCPD Accountability Measures, Pardons Roderick Reed* (June 4, 2020), available online at: https://tinyurl.com/mr44dku5 .............................. 8

Noelle Bellow, *Golden Gate Bridge protest was organized by teens seeking change* (Jun. 7, 2020), available online at: https://tinyurl.com/39bvptrs ................................................ 10

iii

*OPD Crowd Control and Crowd Management Policy*,
  Oakland Police Dep't (Aug. 29, 2023), available online at:
  tinyurl.com/rwfwjr54 ................................................................. 8

Pittsburgh Bureau of Police Roadway Safety Guidelines
  (July 26, 2018), available online at:
  https://apps.pittsburghpa.gov/redtail/images/3364_PBP_P
  rotest_Guidelines_2018.pdf ...................................................... 9

*Policy and Procedural Order 041-044: Body Worn Cameras*,
  Ann Arbor Police Dep't (Nov. 20, 2023), available online
  at: https://tinyurl.com/3eyaaet8 ............................................. 10

*Response to First Amendment Assemblies and
  Demonstrations and Unplanned Incidents*, Albuquerque
  Police Dep't (Oct. 7, 2017), available online at:
  https://tinyurl.com/3p8cff7n .................................................... 8

Rob Roth, Fox KTVU (Jun. 14, 2021), available online at:
  https://tinyurl.com/yda77bk6 ................................................. 10

*What military experts are saying: Veterans unite against
  militarization of California*, Office of the Governor of the
  State of California (Jun. 11, 2025), available online at:
  tinyurl.com/5n7586yv ............................................................ 14

iv

## STATEMENT OF INTEREST

Law enforcement is largely a local government function. Jurisdictions across the country rely on municipal police departments and county sheriffs to keep the peace and protect their communities. *Amici curiae* are local governments and officials from across the nation.[1] These municipalities and counties differ in size, demographics, and policy priorities, but share an interest in keeping their constituents safe, including during periods of public protest. Indeed, *Amici* have successfully maintained order in even the most tumultuous moments in our nation's history. Through years of experience, *Amici* have developed policies and practices that balance the individual rights of their citizens with public safety needs.

By deploying the California National Guard and the U.S. Marines to respond to protests, appellants have put *Amici*'s ability to implement these local policing goals and practices in jeopardy. The President's June 7, 2025 memorandum to the U.S. Department of Defense is unlimited in

---

[1] No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparation or submission of this brief. A list of all *Amici* is provided at Appendix A.

1

its geographical scope, Dkt. No. 5.1 at A249, and *Amici* are gravely concerned that any protest within their borders could result in the unnecessary and disruptive deployment of military force. The needless deployment of federal forces to manage public protests in local jurisdictions is not only unlawful but increases the risk of violence and property damage. Those risks are particularly acute where, as here, military troops are deployed on city streets absent state and local request, consent, or coordination.

*Amici* respectfully submit this brief in support of appellees' opposition to appellants' emergency motion to stay the district court's temporary restraining order pending appeal.

## SUMMARY OF ARGUMENT

This Court should deny appellants' motion for a stay pending appeal. The district court's temporary restraining order enjoining the deployment of the National Guard to Los Angeles reflects a sober and balanced understanding of federal law, which enshrines the sovereign interest of states and the plenary police power of their local governments. Dkt. No. 5.1 at 261–96 ("Order"). It "is in the public interest that federal

2

courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) (quotation marks omitted).

The deployment of the military to police local protests is not only unlawful, but also it inflames protests and interferes with local governments' ability to safely and effectively respond to those protests. Unlike the National Guard or the military, local law enforcement have specialized training and local expertise in policing protests within their respective jurisdictions in a manner that protects the legal rights of individuals and businesses and deescalates tense situations.

Local governments like *Amici* have established protocols for facilitating First Amendment activities, including crowd control tactics developed over years of experience with community input, have deep community ties to leaders in their communities, and expertise on the particulars of the community they police. Military troops do not.

Domestic military deployment also interferes with state and local coordination, impeding their ability to address emergencies like civil unrest. The presence of concurrent military troops can even interfere

3

with local law enforcement's chain of command, deployment structures, and de-escalation strategies. This can decrease police efficacy and cause accidents—potentially lethal ones.

For these reasons, the status quo before appellants' unlawful military mobilization was decisively better for the public interest. This Court can deny appellants' motion on this basis alone. *See Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020) (denying motion to stay injunction where public interest lies with preserving decades-old governance system).

## ARGUMENT

### I. APPELLANTS' DEPLOYMENT OF MILITARY FORCES TO MANAGE DOMESTIC PROTESTS, WITHOUT REQUEST FROM LOCAL OR STATE AUTHORITIES, SEVERELY HARMS THE PUBLIC INTEREST.

The district court correctly concluded that a temporary restraining order is warranted. There was no legal authority for Defendants' actions to federalize the California National Guard. Their interference with local law enforcement and diversion of state resources irreparably harms California. The public interest and the balance of equities support denying appellants' motion and allowing the district court's order to remain in force pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434

4

(2009).

In considering the public interest prong of the *Nken* stay standard, courts look to all who would be impacted by the requested stay pending appeal. *Golden Gate Restaurant Ass'n v. City and Cnty. of San Francisco*, 512 F.3d 1112, 1126–27 (9th Cir. 2008). Here, *Amici* emphasize the serious harm that municipalities and counties face when, without request by the local or state government, the National Guard or the federal military are mobilized to manage local protests. Local law enforcement are better equipped to manage public protests, and the forced presence of military troops on city streets inflames tensions, decreases the efficacy of local law enforcement, and interrupts chains of command.

Military policing is also inconsistent with the United States' history and tradition of preserving control over police to democratically elected local officials. *See Laird v. Tatum*, 408 U.S. 1, 15–16 (1972). Federalizing the National Guard or domestically deploying the military should be an absolute last resort, reserved in those exceedingly rare cases of foreign invasion, violent revolution, or calamitous disaster—instances where local resources are easily overwhelmed and need support (not replacement). Indeed, the Framers of the U.S. Constitution well

5

understood that local matters are best addressed at the local level. "The Framers thus ensured that powers which 'in the ordinary course of affairs, concern the lives, liberties, and properties of the people' were held by governments more local and more accountable than a distant federal bureaucracy." *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) (quoting The Federalist No. 45, at 293 (J. Madison)).

The President's June 7 Memorandum and the forced deployment of the California National Guard and the Marines into Los Angeles not only impinges on core local government authority, it puts public safety at risk.

### A.   Local law enforcement are better equipped to manage public demonstrations, even if they become violent.

The vast majority of protests and demonstrations across the United States are peaceful.[2] In most circumstances, local police officers and sheriff's deputies are necessary only to control traffic and support paramedics if someone suffers a health event. But if public demonstrations do threaten public safety, local law enforcement are

---

[2] *See, e.g.*, *Demonstrations and Political Violence in America: New Data for Summer 2020*, ACLED (Sept. 3, 2020), available online at: https://tinyurl.com/ymzvjdxd (finding that 93% of national demonstrations connected to the BLM movement were peaceful).

better trained and equipped than military forces to handle such incidents.

Unlike the military, which secures combat and natural disaster zones, local law enforcement agencies have extensive experience managing protests and demonstrations. *Amici* have well-established procedures and training that balance both concerns for public safety and individual liberty, managing crowds to protect persons and property while ensuring respect for constitutional rights.

For example, the San Francisco Police Department ("SFPD") has developed crowd control policies that protect the constitutional rights of protesters and limit the use of force. SFPD General Order 8.03.[3] The policies make clear that law enforcement "balance the group's First Amendment rights of free speech and assembly while preventing and reasonably enforcing observed violations of the law" and that the SFPD will not attempt to limit the size or location of any protest "unless there are articulable facts or circumstances causing reasonable concern for

---

[3] SFPD General Order 8.03 is available online at: https://tinyurl.com/39cta65c.

7

public safety, public health, or the safe movement of persons." *Id.* at 2; *see also Grider v. Abramson*, 180 F.3d 739, 751-53 (6th Cir. 1999) (recognizing that local governments have "significant public interests in fostering the privileges of free expression and assembly of all participants" and in "the preservation of community peace" at a public demonstration). SFPD policies further detail procedures for safely dispersing a dangerous crowd while minimizing the likelihood of force being used. SFPD General Order 8.03 at 1–2. Likewise, police in Madison, Wisconsin are trained to balance "public safety and order along with the impact on the demonstration participants' freedom of speech and assembly."[4]

Local law enforcement also know their communities best. They understand neighborhoods' nuances, are familiar with local infrastructure, and have established relationships with community

---

[4] *Demonstrations and Assemblies*, City of Madison Police Dep't (Feb. 3, 2025), available online at: https://tinyurl.com/2ckczn6a; *see also OPD Crowd Control and Crowd Management Policy*, Oakland Police Dep't (Aug. 29, 2023), available online at: https://tinyurl.com/rwfwjr54; *Response to First Amendment Assemblies and Demonstrations and Unplanned Incidents*, Albuquerque Police Dep't (Oct. 7, 2017), available online at: https://tinyurl.com/3p8cff7n.

8

organizations and leaders.[5] Local law enforcement understand which tactics might escalate a situation in a particular community and what might be more useful in calming that same community. Local law enforcement such as the Pittsburgh Police Department have "learned through experience that when organizers work cooperatively," public safety is better maintained.[6] Military troops with no local orientation lack these critical insights.

---

[5] Law enforcement agencies like SFPD devote significant time to community engagement with the aim of building the public's trust. *Community Engagement Division (CED)*, SFPD, available online at: https://tinyurl.com/3udxvkfd; *see also Community Police Review Agency,* City of Oakland, available online at: https://tinyurl.com/yvppt243; *Mayor Lucas Announces Significant KCPD Accountability Measures, Pardons Roderick Reed* (June 4, 2020), available online at: https://tinyurl.com/mr44dku5 (describing collaboration between the local police department and city council to inform the public of community engagement efforts).

[6] Pittsburgh Bureau of Police Roadway Safety Guidelines (July 26, 2018), available online at: https://apps.pittsburghpa.gov/redtail/images/3364_PBP_Protest_Guidelines_2018.pdf; *see also* City of New Haven, *Statement by Mayor Elicker on Yale University Students Protests and Successful De-escalation by the New Haven Police Department* (Apr. 23, 2024), available online at: https://tinyurl.com/6cen9s3n (describing the local police department "successfully working with student organizers to de-escalate the situation and ensuring a peaceful and orderly reopening of . . . streets to the public.").

At an operational level, local law enforcement also have a deep understanding—developed over decades of experience—of where protest activity is likely to endanger public safety. For example, in San Francisco, the Golden Gate Bridge and the Bay Bridge are often targets for protest activity.[7] Bridge protests can pose unique dangers unless properly managed. Given its experience, SFPD is able to respond to these protests and coordinate with well-known state partners like the Golden Gate Bridge Highway & Transportation District and the California Highway Patrol.

Finally, local law enforcement are also more accountable to their communities, and their methods of policing often reflect community priorities and concerns. For example, local law enforcement in many states, including California, are subject to rigorous training, policies, and civilian oversight around the use of force.

Local law enforcement also utilize specialized equipment, including body-worn cameras, to document interactions with the public. In

---

[7] *See, e.g.*, Noelle Bellow, *Golden Gate Bridge protest was organized by teens seeking change*, KRON4 (Jun. 7, 2020), available online at: https://tinyurl.com/39bvptrs; Rob Roth, Fox KTVU (Jun. 14, 2021), available online at: https://tinyurl.com/yda77bk6.

Chicago, municipal policies dictate the use of body cameras in order to "build trust with the public."[8] In addition, under California law, whenever local law enforcement agencies deploy military-style equipment (*e.g.*, using drones for aerial surveillance to assist with crowd control), they must report on those uses to their local governing body and the public. Cal. Gov't Code § 7072. This requirement is grounded in the Legislature's finding that military-style intervention in local communities "impacts the public's safety and welfare," and therefore "[t]he public has a right to know about" and weigh in on any "use of military equipment by state or local government officials."[9] By contrast, military troops are not accountable to the local community affected by their presence and actions, including in their use of force against members of the public. *See NFIB*, 567 U.S. at 536 (explaining why local policing authority is held by local governments instead of an unaccountable federal bureaucracy).

---

[8] *Body Worn Cameras*, Chicago Police Dep't, (Dec. 1, 2023), available online at: https://tinyurl.com/bdh87p97; *see also Policy and Procedural Order 041-044: Body Worn Cameras*, Ann Arbor Police Dep't (Nov. 20, 2023), available online at: https://tinyurl.com/3eyaaet8.

[9] Cal. Assembly Bill 481 (2021), Leg. Counsel's Digest, available online at https://tinyurl.com/3y9bpsdc.

### B. Deploying the military for policing purposes without coordinating with local law enforcement decreases policing efficacy and undermines chains of command.

Appellants' deployment of National Guard troops and Marines to Los Angeles without consent or coordination with the State of California or local authorities has inflamed tensions and undermined local law enforcement's ability to maintain order while allowing peaceful protest. *See* Order at 6–7 (finding that a military presence inflamed protesters).

Local governments like *Amici* have established policies and procedures for coordinating responses to significant emergencies and civil unrest when local resources prove to be insufficient. They allow local governments to request additional state and local resources in a practiced manner that will deescalate tensions and prevent disorder.

For example, in San Francisco, in the event of an emergency requiring additional state and/or local resources, the City activates its Emergency Operations Center to coordinate planning, information-sharing, and responses between all city departments and partner agencies. These channels of coordination extend further between local jurisdictions and states. For instance, the State of California has had a law enforcement "mutual aid system" in place since 1961. Under this

12

system, if a locality lacks the resources to respond to an emergency, it can call on neighboring law enforcement agencies for assistance. Depending on the severity of the emergency, regional resources and even statewide resources can be brought to bear in a coordinated and manner to address the problem.[10] Centralized information-sharing and coordination of responses within these groups avoids putting the public or other first responders at risk due to erroneous information and potential conflicting responses.

Deploying military troops outside of these established processes heightens the likelihood of coordination failures and ultimately introduces more complexity and risk for local law enforcement and the public.[11] Indeed, it severely heightens the risk of interjurisdictional *mis*communication. In the fog of an unplanned and unnecessary military

---

[10] California Governor's Off. of Emergency Servs., *Mutual Aid*, available online at: https://tinyurl.com/359x65ec. Other cities have similar mutual aid agreements in place. *See, e.g.*, Rev. Stat. Mo. § 44.090-44.098 (Kansas City); *see also* Mass. Gen. Laws, Ch. 40 Sec. 4J (cities and towns can enter into a mutual aid agreement for cross-jurisdictional provision of emergency services).

[11] LAPD News Release (June 9, 2025), available online at: https://t.ly/_U7vP. As a collateral impact of escalations, local prosecutors must be prepared to handle resulting prosecutions of vandalism and other misdemeanors, potentially pulling them away from other priorities

deployment amidst a state and local response, command lines are invariably blurred and accountability opaque, resulting in a decrease in law enforcement efficacy and, worse still, a risk that the interventions will only increase the risk of "friendly-fire" accidents that could harm members of the public, local law enforcement and federal forces.[12]

## CONCLUSION

Because the public interest overwhelmingly supports maintaining the status quo this Court should deny appellants' motion for a stay of the District Court order.

Dated: June 15, 2025          Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS
KARUN A. TILAK
Deputy City Attorneys

---

[12] *What military experts are saying: Veterans unite against militarization of California*, Office of the Governor of the State of California (Jun. 11, 2025), available online at: https://tinyurl.com/5n7586yv.

14

By:  */s/ Yvonne R. Meré*
     YVONNE R. MERÉ
     Chief Deputy City Attorney

     *Attorneys for Amicus Curiae*
     *City and County of San Francisco*

Dated:  June 15, 2025     PUBLIC RIGHTS PROJECT

     */s/ Jonathan Miller*

     JENNY MA
     ALEXANDRA KLIGER
     JONATHAN MILLER
     490 43rd Street, #115
     Oakland, CA 94609
     Telephone: (510) 738-6788

     *Attorneys for Amicus Curiae* Listed in
     Appendix

Dated:  June 15, 2025     KEKER, VAN NEST & PETERS LLP

     */s/ Anjali Srinivasan*
     CODY S. HARRIS
     ANJALI SRINIVASAN
     SOPHIE HOOD
     IAN KANIG
     CARA R. MEYER
     ELIANE HOLMUND

     *Attorneys for Amicus Curiae* City of
     Chicago, County of Santa Clara, City
     of Alameda, City of Santa Monica

15

Dated:  June 15, 2025

*/s/ Yibin Shen*
YIBIN SHEN
City Attorney
2263 Santa Clara Avenue
Alameda, CA 94501
*Attorney for the City of Alameda, California*

Dated:  June 15, 2025

*/s/ Lauren Keefe*
LAUREN KEEFE
City Attorney
One Civic Plaza NorthWest
P.O. Box 2248
Albuquerque, NM 87103
*Attorney for the City of Albuquerque, New Mexico*

Dated:  June 15, 2025

*/s/ Ebony M. Thompson*
EBONY M. THOMPSON
City Solicitor
Baltimore City Department of Law
100 North Holliday Street
Baltimore, MD 21202
*Attorney for the City of Baltimore, Maryland*

Dated:  June 15, 2025

*/s/ Megan B. Bayer*
MEGAN B. BAYER
City Solicitor
City Hall
795 Massachusetts Avenue
Cambridge, MA 02139
*Attorney for the City of Cambridge, Massachusetts*

Dated:  June 15, 2025

*/s/ Mary B. Richardson-Lowry*
MARY B. RICHARDSON-LOWRY
Corporation Counsel

16

121 North LaSalle Street, Room 600
Chicago, IL 60602
*Attorney for the City of Chicago, Illinois*

Dated: June 15, 2025     */s/ Carlos Pabellon*
CARLOS PABELLON
Corporation Counsel
DAVID R. GAULT
Deputy Corporation Counsel
City-County Building
210 Martin Luther King, Jr., Boulevard
Madison, WI 53703
*Attorneys for the County of Dane, Wisconsin*

Dated: June 15, 2025     */s/ Alexandra B. Ruggie*
ALEXANDRA B. RUGGIE
Corporation Counsel
909 Davis Street
Evanston, IL 60201
*Attorney for the City of Evanston, Illinois*

Dated: June 15, 2025     */s/ Leesa Manion*
LEESA MANION
Prosecuting Attorney
Chinook Building
401 Fifth Avenue, Suite 800
Seattle, WA 98104
*Prosecuting Attorney for Martin Luther
King, Jr. County, Washington*

Dated: June 15, 2025     */s/ Kristyn Anderson*
KRISTYN ANDERSON
City Attorney
350 South Fifth Street
Minneapolis, MN 55415

17

*Attorney for the City of Minneapolis, Minnesota*

Dated:  June 15, 2025

/s/ John P. Markovs
JOHN P. MARKOVS
Montgomery County Attorney
101 Monroe Street
Rockville, MD 20850
*Attorney for Montgomery County, Maryland*

Dated:  June 15, 2025

/s/ Patricia King
PATRICIA KING
Corporation Counsel
Office of New Haven Corporation Counsel
165 Church Street
New Haven, CT 06510
*Attorney for the City of New Haven, Connecticut*

Dated:  June 15, 2025

/s/ Krysia Kubiak
KRYSIA KUBIAK
City Solicitor and Chief Legal Officer
414 Grant Street
Pittsburgh, PA 15219
*Attorney for the City of Pittsburgh, Pennsylvania*

Dated:  June 15, 2025

/s/ Susana Alcala Wood
SUSANA ALCALA WOOD
City Attorney
915 I Street
Sacramento, CA. 95814
*Attorney for the City of Sacramento, California*

18

Dated:  June 15, 2025          */s/ John D. Nibbelin*
                                     JOHN D. NIBBELIN
                                     County Attorney
                                     500 County Center
                                     Redwood City, CA 94063
                                     *Attorney for the County of San Mateo, California*

Dated:  June 15, 2025          */s/ Tony Lopresti*
                                     TONY LOPRESTI
                                     County Counsel
                                     KAVITA NARAYAN
                                     Chief Assistant County Counsel
                                     MEREDITH A. JOHNSON
                                     Lead Deputy County Counsel
                                     70 West Hedding Street East Wing, Ninth Fl
                                     San José, CA 95110
                                     *Attorneys for the County of Santa Clara, California*

Dated:  June 15, 2025          */s/ Douglas T. Sloan*
                                     DOUGLAS T. SLOAN
                                     City Attorney
                                     1685 Main Street
                                     Santa Monica, CA 90401
                                     *Attorney for the City of Santa Monica, California*

Dated:  June 15, 2025          */s/ Lauren Langer*
                                     LAUREN LANGER
                                     City Attorney
                                     Best Best & Krieger LLP
                                     300 South Grand Avenue, 25th Floor
                                     Los Angeles, CA 90071
                                     *Attorney for City of West Hollywood, California*

19

## APPENDIX A – List of *Amici Curiae*

City and County of San Francisco, California

City of Alameda, California

Marilyn Ezzy Ashcraft
*Mayor, City of Alameda, California*

Nikki Fortunato Bas
*Supervisor, Alameda County, California*

Lena Tam
*Supervisor, Alameda County, California*

City of Albuquerque, New Mexico

City of Baltimore, Maryland

Zohaib "Zo" Qadri
*Councilmember, City of Austin, Texas*

Isabel Piedmont-Smith
*Councilmember, City of Bloomington, Indiana*

Michael Dougherty
*District Attorney, Boulder County, Colorado*

Christopher Werner
*Councilmember, Town of Brighton, New York*

Robin Wilt
*Councilmember, Town of Brighton, New York*

Sarah Leonardi
*School Board Member, Broward County,* Florida

Diane M. Ellis-Marseglia
*Commissioner and Vice-Chair, Bucks County, Pennsylvania*

20

City of Cambridge, Massachusetts

Michael Siegrist
*Clerk, Canton Township, Michigan*

Braxton White
*Commissioner, Clarion County, Pennsylvania*
City of Chicago, Illinois

Michael Chameides
*Supervisor, Columbia County, New York*

Beau Harbin
*Legislator, Cortland County, New York*

Yasmine-Imani McMorrin
*Mayor, City of Culver City, California*

Bryan "Bubba" Fish
*Councilmember, City of Culver City, California*

County of Dane, Wisconsin

City of Evanston, Illinois

Heidi Garrido
*Councilmember, City of Hopkins, Minnesota*

Quinton D. Lucas
*Mayor, City of Kansas City, Missouri*

Seema Singh
*Councilmember, City of Knoxville, Tennessee*

Satya Rhodes-Conway
*Mayor, City of Madison, Wisconsin*

21

Jerald Lentini
*Director, Town of Manchester, Connecticut*

Martin Luther King, Jr. County, Washington

City of Minneapolis, Minnesota

Susan Hughes-Smith
*Legislator, Monroe County, New York*

Montgomery County, Maryland

City of New Haven, Connecticut

Christopher Jaramillo
*School Board President, Norristown Area School District, Pennsylvania*

City of Oakland, California

Ryan Richardson
*City Attorney, City of Oakland, California*

Robin Denson
*Councilmember, Pierce County, Washington*

City of Pittsburgh, Pennsylvania

John Clark
*Mayor, Town of Ridgway, Colorado*

Lisa Kaplan
*Councilwoman, City of Sacramento, California*

City of Sacramento, California

Todd Gloria
*Mayor, City of San Diego, California*

22

Heather Ferbert
*City Attorney, City of San Diego, California*

County of San Mateo, California

Jessie Lopez
*Councilmember, City of Santa Ana, California*

County of Santa Clara, California

City of Santa Monica, California

Caroline Torosis
*Mayor Pro Tempore, City of Santa Monica, California*

Veronica Pillar
*Legislator, Tompkins County, New York*

Andy Brown
*Judge, Travis County, Texas*

Eli Savit
*Prosecuting Attorney, Washtenaw County, Michigan*

City of West Hollywood, California

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** 25–3727

The undersigned attorney or self-represented party states the following:

☒ I am unaware of any related cases currently pending in this court.

☐ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

☐ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated: June 15, 2025            Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS
KARUN A. TILAK
Deputy City Attorneys

By: */s/ Yvonne R. Meré*
YVONNE R. MERÉ
Chief Deputy City Attorney

Attorneys for *Amicus Curiae*
City and County of San Francisco

24

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25–3727                      `

    I am the attorney or self-represented party.

    This brief contains 2,567 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties;

    ☐ a party or parties are filing a single brief in response to multiple briefs; or

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature   */s/ Yvonne R. Meré*       Date June 15, 2025
*(use "s/*[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

## CERTIFICATE OF SERVICE

I, SARAH L. GUTIERREZ, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 15, 2025.

**CORRECTED BRIEF OF *AMICI CURIAE* OF LOCAL GOVERNMENTS AND LOCAL GOVERNMENT LEADERS IN SUPPORT OF APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION TO STAY PENDING APPEAL**

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Executed June 15, 2025, at San Francisco, California.

*/s/ Sarah L. Gutierrez*

SARAH L. GUTIERREZ

26