No. 25-3727

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

NEWSOM, et al.,
*Plaintiffs-Appellees*,

v.

TRUMP, et al.,
*Defendants-Appellants*

_____

On Appeal from the United States District Court
for the Northern District of California, No. 3:25-cv-04807-CRB

_____

**[PROPOSED] BRIEF OF *AMICUS CURIAE* BLUE EAGLE COALITION IN
SUPPORT OF DEFENDANTS AND REVERSAL**

_____

Andrew G. Watters (CA #237990)
Andrew G. Watters, Esq.
555 Twin Dolphin Dr., Ste. 135
Redwood City, CA 94065
+1 (650) 542-0057,800
andrew@watters.law

Attorney for Amicus Curiae Blue Eagle Coalition,
an unincorporated association

# TABLE OF CONTENTS

**INTRODUCTION**     **3**

**FACTS**     **3**

**ARGUMENT**     **5**

    **I.**   **THE ATTORNEYS ASSISTING APPELLEES HAVE IMPLICATED IMPORTANT CONCERNS ABOUT THE U.S. CONSTITUTION AND FEDERAL LAW, UNDER WHICH FEDERAL LAW MUST TAKE PRECEDENCE**     **5**

    **II.**   **ON THE MERITS, DEFENDANTS ARE ENTITLED TO REVERSAL OF THE T.R.O. AND AN IMMEDIATE DISMISSAL UNDER RULE 12**     **9**

**CONCLUSION**     **14**

**CERTIFICATE**     **15**

## INTRODUCTION

Non-party Blue Eagle Coalition, an unincorporated association ("Amicus")[1], is a small, private group of concerned attorneys who, while not necessarily agreeing with the President, nevertheless support his position for the reasons stated in the proposed amicus brief: (1) when a State-licensed attorney is faced with a conflict between State law and Federal law, the attorney should have an obligation to favor Federal law under the Supremacy Clause; (2) on the merits, the President has the sole discretion to determine whether he needs to call up the National Guard and/or use active duty forces to support the Federal government.

## FACTS

As it was impracticable to obtain declarations from either side in the District Court and the situation is continuously rapidly developing, all of the facts relied on herein are summarized from the parties' public statements on television and social media platforms from June 6 to June 11, 2025 when the underlying amicus brief was filed in the District Court.

---

[1] The disclosure statement required under FRAP Rule 29.1 has been contemporaneously filed, as well as the filing attorney's oath of admission to this Court, which deems him admitted as of the filing under Circuit Rule 46 and guidance issued thereunder by this Court.

According to the Governor, as well as the non-party Mayor of Los Angeles, there were "mostly peaceful" "protests" against the Federal government's efforts to enforce Federal immigration law. To that end, the Mayor of Los Angeles had been holding press conferences in which she stated that the City government would not cooperate with Federal immigration enforcement, that the President provoked the protests, and that the President should withdraw the National Guard from Los Angeles. The Governor echoed these statements while also mounting a public relations campaign against the President, in which the Governor claimed the President is a "dictator" and that the President is threatening to arrest the Governor. Of key note, the Governor claimed that he was never contacted by the President and offered an opportunity to call up the National Guard.

According to the President, there were violent agitators, insurrectionists, and even paid anarchists who were violently attacking law enforcement, destroying property, and looting, all while waving foreign flags. The images were plentiful on X and other social media platforms, samples of which were attached to the supporting Declaration of Amicus in the District Court. The President also produced proof that he called the Governor after midnight on June 7, 2025 -- the early morning of the second day of rioting -- and spoke with the Governor for 16 minutes. The President stated he asked the Governor to "get his ass in gear" and handle the unlawful violence. After this call, according to the President, the

Governor failed to act. Thus, the President issued his June 7, 2025 proclamation later that day ordering the deployment of 2,000 National Guardsmen to Los Angeles, later supplemented by active duty Marines and more National Guardsmen.

According to multiple polls, the majority of the public supports the President's deployments to Los Angeles. It is against this context and background that recourse to the applicable law is critical.

## ARGUMENT

### I.    THE ATTORNEYS ASSISTING APPELLEES HAVE IMPLICATED IMPORTANT CONCERNS ABOUT THE U.S. CONSTITUTION AND FEDERAL LAW, UNDER WHICH FEDERAL LAW MUST TAKE PRECEDENCE.

The Oath taken by all California-admitted attorneys, including the Deputy Attorneys General who filed this action, is:

I, (licensee name) solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of the State of California, and that I will faithfully discharge the duties of an attorney and counselor at law to the best of my knowledge and ability. As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy and integrity.

There are additional duties imposed by statute, case law, and ethical rules, such as the duties:

"To support the Constitution and laws of the United States and of this

state." Cal. Bus. and Prof. Code sec. 6068(a).

"To counsel or maintain those actions, proceedings, or defenses only as

appear to him or her legal or just, except the defense of a person charged with a

public offense." Cal. Bus. and Prof. Code sec. 6068(c).

"Not to encourage either the commencement or the continuance of an

action or proceeding from any corrupt motive of passion or interest." Cal. Bus. and

Prof. Code sec. 6068(g)

Of critical importance, the Supremacy Clause in the Constitution clearly

gives Federal law precedence-- and also logically must require a California

attorney to support Federal law when there is a conflict with State law.  See, e.g.,

the recent cases of *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320

(2015) and *Kansas v. Garcia*, 589 U.S. 191 (2020).

In *Armstrong*, the Supreme Court wrote:

The Supremacy Clause, Art. VI, cl. 2, reads:

"This Constitution, and the Laws of the United States which shall be
made in Pursuance thereof; and all Treaties made, or which shall be
made, under the Authority of the United States, shall be the supreme
Law of the Land; and the Judges in every State shall be bound
thereby, any Thing in the Constitution or Laws of any State to the
Contrary notwithstanding."

It is apparent that this Clause creates a rule of decision: Courts "shall"
regard the "Constitution," and all laws "made in Pursuance thereof,"
as "the supreme Law of the Land." They must not give effect to state

laws that conflict with federal laws. [...] It instructs courts what to do
when state and federal law clash....
This duty to favor Federal law is reinforced in Rule 1.2.1. of the California

Rules of Professional Conduct, which prohibits advising violations of law; when

State and the Federal law are in conflict, the attorney is required to advise the

client of the consequences under both sets of laws, as noted in the official

comments: "If California law conflicts with federal or tribal law, the lawyer must

inform the client about related federal or tribal law and policy and under certain

circumstances may also be required to provide legal advice to the client regarding

the conflict." Official Comment 6.

From the Supremacy Clause, the applicable state statutes, and the

applicable case law, it is obvious that a California-admitted attorney has or should

have a duty to favor Federal law over State law.  It does not matter whether the

attorney agrees or disagrees with the President; the law and public policy impose

allegiance to the United States before the attorney's State of residence-- just as the

attorney is a citizen of the United States before a citizen of his or her own State.

This is critically important in order to ensure the continued functioning of both the

State and Federal Government.

Indeed, the State Bar of California has discussed similar issues when

ruling that state-licensed attorneys are subject to discipline for their actions in

Federal court: " '[i]f an attorney admitted to

practice in the courts of this state commits acts in reference to federal court litigation which reflect on his integrity and fitness to enjoy the rights and privileges of an attorney in the state courts, proceedings may be taken against him in the state court.'" *In the Matter of Gadda* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 416, 420, quoting *Geibel v. State Bar* (1938) 11 Cal.2d 412, 415.

Even assuming, for the sake of argument, that there is no precedence of Federal law for a state-licensed attorney, *the attorney still must uphold Federal law* for the reasons previously stated. Because the attorneys filing this action are potentially disregarding their duties to uphold Federal law, the District Court should have found a Rule 11 violation and dismissed this action or otherwise sanctioned Plaintiffs' counsel. To hold otherwise would permit California government attorneys to disregard Federal law and create a double standard in which civilian attorneys are held to a stricter set of rules-- because civilian attorneys get in trouble for far less serious things than trying to sue the President to stop him from enforcing Federal law and protecting Federal facilities and personnel. The District Court completely overlooked this issue in the brief Amicus filed there, not even mentioning the duties of attorneys in the decision.

//

//

## II.

## ON THE MERITS, DEFENDANTS ARE ENTITLED TO REVERSAL OF THE T.R.O. AND AN IMMEDIATE DISMISSAL UNDER RULE 12

The President is absolutely immune from civil liability for Presidential acts. *Nixon v. Fitzgerald*, 457 U.S. 731 (1982). The separation of powers principle gives rise to absolute immunity, which is an important matter of public policy. The President has greater protections than governors and other officials, who have qualified immunity, since the President holds a unique position in the structure of government and has uniquely important duties. The distractions caused by defending a civil lawsuit would improperly distract the President from fulfilling his executive function, which would undermine the government more broadly. There is no cause for concern that the President will be above the law, since impeachment and other processes impose checks on his powers. "While the separation of powers doctrine does not bar every exercise of jurisdiction over the President, a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch." *Nixon* at 732.

It is precisely an intrusion on the Executive Branch that the Plaintiffs have made here. The Governor, citing statutory language that clearly is incomplete and/or procedural in nature, while also omitting statutory language that clearly

does apply, is misleading the Court as to his true intentions. The Governor's endgame appears to be to keep in California persons who are illegally in the United States because California's electoral vote will decrease if those individuals are removed en <u>masse</u> from California, due to the apportionment of electoral votes based on population. Essentially, if California loses millions of persons without legal status, there will be less electoral votes and fewer Congressional representatives, which would be harmful to the Governor's political party. This obvious self-interest and the promotion of political gain permeates the Governor's filings in this action.

In any case, the Governor's effort is futile because "the authority to call forth the militia has been vested in the President, who is the sole judge of the exigency justifying the call. *Martin v. Mott*, 16 Wheat., 19." *Alabama G. S. R. Co. v. United States*, 49 Ct. Cl. 522 (1914) (emphasis added). See also *Presser v. Illinois*, 116 U.S. 252 (1886) (discussing Illinois state law on the militia in conjunction with the Constitution and Acts of Congress).

The discretionary function of the President in deciding whether to call forth the National Guard for Federal service is not subject to any form of attempted mandate or prohibition by the Governor in the Distrcit Court, simply because the authority to call forth the militia for Federal service has been exclusively vested in the President. The discretionary function of deciding to use force to protect

Federal facilities and personnel is exactly the type of decision the President is supposed to make, and it is not ministerial in the least. As such, the Governor is not in a position to second-guess the President's decision to call up the National Guard, especially for his own political reasons. The T.R.O. sought by the Governor is also an attempt to interfere with core Article II powers and the Federal functions of protecting each State from "Invasion" as well as "Domestic Violence," both of which are powers of the President in the Constitution. The fact that the statute cited by the Governor procedurally directs orders to be made "through" the Governor should indicate that the Governor has a ministerial duty to forward the orders-- nothing in the statute offers the Governor any discretion to disobey or modify the President's mobilization orders. If the Governor refuses to act, which the Governor in this scenario is openly saying he is doing in defiance of the Federal government, this implicates the President's authority under other law, such as 10 U.S.C. sec. 252. This other statute provides: "Whenever the President considers that unlawful obstructions, combinations, or assemblages, or rebellion against the authority of the United States, make it impracticable to enforce the laws of the United States in any State by the ordinary course of judicial proceedings, he may call into Federal service such of the militia of any State, and use such of the armed forces, as he considers necessary to enforce those laws or to suppress the rebellion." The Complaint here concedes the President stated his findings in the

proclamation that "[t]o the extent that protests or acts of violence directly inhibit the execution of the laws, they constitute a form of rebellion against the authority of the Government of the United States."  Thus, even assuming, for the sake of argument, that the President did not follow the procedure in the statute the Governor cites, and that the procedural failing was not caused by the Governor, and that the procedural issuance of orders somehow invalidates the President's actions despite finding the existence of rebellion under the law, there are other statutes expressly authorizing the President to do exactly the same thing.  Section 252 also should have the same discretion as the statute the proclamation was issued under; there is no reason why a later-enacted statute with substantially the same language should be treated differently than the earlier-enacted statute (252) that clearly states the President is the one who determines whether the conditions exist. The complete omission of this additional basis on which to sustain the President's decision shows a disingenuous reading of the law by the Governor's counsel—and this issue was also not addressed in the District Court's decision.

There are yet more bases on which to reverse the T.R.O.  First, the balance of hardships should consider the impact on Federal employees, Federal property, and civilians/citizens in the event the T.R.O. is granted.  If granted, the employees, property, and civilians would all be in grave danger due to the Governor's unwillingness to provide a safe and secure environment for citizens.  As such, the

Governor has denied citizens their Federal rights and denied citizens equal protection under the law-- both additional reasons to uphold the President's discretionary decisions.  Contrast with the hardship to Plaintiffs if there is no T.R.O.  There is no hardship to Plaintiffs except for their rightful embarrassment and shame, which they deserve for refusing to uphold Federal law and seeking to force the President to answer to a committee every time he makes a decision to use force.  This is contrary to law.  Additionally, the District Court cited an attorney declaration 29 times in support of the TRO decision, when that declaration did not have personal knowledge and consisted primarily of news articles with multiple levels of hearsay.  News articles and a hearsay declaration should be insufficient to restrain the President from use of force and require him to remove those forces.

Finally, the District Court's own decision makes it obvious why the District Court does not have the authority he believes he has; the latest filings deny the Appellants' motion to extend the preliminary injunction briefing schedule because the evidentiary record was completed on June 9.  A court simply cannot keep up with Executive Branch decisions because those decisions are based on the latest information, not an evidentiary record for trial.  This shows exactly why war is not waged by judicial committee; if it were, the District Court could review any military decision or core Article II decision.

## CONCLUSION

This Court should reverse or vacate the T.R.O. as an interference with the President's functions.  Otherwise, there is a risk that the Government will be brought to a standstill, unable to protect States or citizens, and the Government may start to see decisions from courts that don't make any sense, such as: "I find the President's deployment of hypersonic missile defenses in Poland was an abuse of discretion."  The problem is that judicial review of such a decision is not clearly consistent with the national interests when, as a result of a court's restraint of executive action, there is nobody left to protect or save.


Date: June 16, 2025                    *Andrew G. Watters*
                          _____
                          Andrew G. Watters, Esq. (CA #237990)

                          Attorney for Amicus Curiae Blue Eagle
                          Coalition, an unincorporated association

## CERTIFICATE OF COMPLIANCE

This brief consists of 2,833 words, which is less than the limit.

This brief's type size and typeface comply with FED. R. APP. P. 27(d) because this brief has been prepared in proportionally spaced typeface using size 14, Times New Roman font in Microsoft Word.

Date: June 16, 2025

*Andrew G. Watters*
_____

Andrew G. Watters, Esq. (CA #237990)

Attorney for Amicus Curiae Blue Eagle Coalition, an unincorporated association