# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GAVIN NEWSOM, In his official capacity            No. 25-3727

as Governor of the State of California

and STATE OF CALIFORNIA,

     Plaintiffs - Appellees,

       v.

DONALD J. TRUMP, in his official capacity            June 24, 2025

as President of the United States; et al.,

     Defendants - Appellants.

D.C. No. 3:25-cv-04870-CRB Northern District of California, San Francisco

---

## BRIEF OF AMICUS CURIAE
## MARTIN AKERMAN, CHIEF DATA OFFICER (44 U.S.C. § 3520)
## OF THE NATIONAL GUARD BUREAU (10 U.S.C. § 10501)
## IN SUPPORT OF APPELLEES

---

Martin Akerman
PO BOX 100057
Arlington, VA 22210
(202) 656-5601
makerman.dod@gmail.com

9th Cir. Case No 25-3727                                              Page 2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................3

STATEMENT OF INTEREST OF AMICUS CURIAE....................................4

SUMMARY OF ARGUMENT............................................................................5

ARGUMENT..........................................................................................................6

  I. THE PRESIDENT'S ORDER IS LIKELY INVALID UNDER THE STERLING V. CONSTANTIN EXCEPTION FOR BAD FAITH AND PRETEXT.......................................6

    A. This Court Correctly Recognized that Deference to the Executive Is Not Absolute and Does Not Extend to Acts of Mere Oppression.......................................................7

    B. The President's Invocation of § 12406 Was a Pretextual Abuse of Power.....................7

    C. The Pending Akerman Litigation Provides a Chilling, Real-World Illustration of Why This Court's Scrutiny for Bad Faith Is Essential....................................................8

  II. THE CONDUCT OF THE FEDERALIZED GUARD MUST BE ANALYZED UNDER THE POSSE COMITATUS ACT, AN ISSUE THIS COURT EXPRESSLY RESERVED....10

    A. The Posse Comitatus Act Is a Non-Discretionary Criminal Prohibition, Not a Guideline Subject to Executive Deference...........................................................10

    B. The Government's Own Narrow Justification for the Deployment Establishes the Boundary for a PCA Violation..................................................................11

    C. Factual Development Is Required to Determine Whether the Guard's Actions Crossed the Line into Prohibited Law Enforcement........................................................12

  III. THE UNILATERAL FEDERALIZATION OF THE CALIFORNIA NATIONAL GUARD INFLICTS A SEPARATE AND IRREPARABLE CONSTITUTIONAL INJURY UPON STATE SOVEREIGNTY...................................................................12

    A. The National Guard's Dual-Sovereignty Status Is a Cornerstone of American Federalism...........................................................................................13

    B. The Seizure of California's Emergency Response Force Constitutes Unconstitutional Commandeering..................................................................................13

CONCLUSION...................................................................................................14

9th Cir. Case No 25-3727                                                    Page 3

# TABLE OF AUTHORITIES

Cases                                                                      Page(s)

Akerman v. The Nevada National Guard, et al.,
Case No. 2:24-cv-01734-RFB-DJA (D. Nev.).....................................................4

Marbury v. Madison,
5 U.S. (1 Cranch) 137 (1803)..............................................................11

Martin v. Mott,
25 U.S. (12 Wheat.) 19 (1827).....................................................5, 6, 11

New York v. United States,
505 U.S. 144 (1992)........................................................................13

Printz v. United States,
521 U.S. 898 (1997)........................................................................13

Sterling v. Constantin,
287 U.S. 378 (1932)...................................................4, 5, 6, 7, 9, 10


Statutes                                                                   Page(s)

10 U.S.C. § 12406..................................................................passim

18 U.S.C. § 1385......................................................5, 6, 10, 11, 12


Constitutional Provisions                                                  Page(s)

U.S. Const. art. I, § 8, cl. 15-16........................................................13

U.S. Const. amend. X......................................................................6, 12

9th Cir. Case No 25-3727                                                                    Page 4

## STATEMENT OF INTEREST OF AMICUS CURIAE

Amicus curiae Martin Akerman is the tenured Chief Data Officer of the National Guard Bureau and the pro se petitioner in Akerman v. The Nevada National Guard, et al., Case No. 2:24-cv-01734-RFB-DJA (D. Nev.). Mr. Akerman is also a frequent pro se litigant before this Court, having appeared in four other matters in the past year:

- Akerman v. Merit Systems Protection Board, No. 24-6975 (Open);

- Akerman v. Kerner, et al., No. 25-1002 (2:24-cv-01602-GMN-DJA (D. Nev.));

- Akerman v. Merit Systems Protection Board, No. 24-6641 (Rehearing); and

- Akerman v. Warden, No. 24-6166.

Mr. Akerman's own litigation challenges the executive branch's use of federalized National Guard troops under the same statute at issue here, 10 U.S.C. § 12406, to carry out domestic law enforcement functions against him as an alleged act of reprisal for protected whistleblowing.

Mr. Akerman's interest is therefore direct and substantial. The central legal questions in this appeal—including the scope of judicial review for a federalization order, the applicability of the Posse Comitatus Act, and the viability of a bad-faith exception to executive deference under Sterling v. Constantin—are central to his own case. The Court's resolution of these issues will directly shape the legal framework governing his ability to seek redress for the alleged violations of his rights.

9th Cir. Case No 25-3727                                            Page 5

## SUMMARY OF ARGUMENT

This Court's order granting a stay pending appeal correctly identified the high bar of deference afforded to the President's initial decision to federalize the National Guard under Martin v. Mott. However, the order also wisely and correctly carved out two critical avenues for meaningful judicial review that are dispositive of this appeal. First, the Court reaffirmed the enduring principle from Sterling v. Constantin that deference ends where bad faith begins. Second, the Court expressly reserved judgment on the legality of the federalized Guard's conduct under the Posse Comitatus Act ("PCA"). This brief, informed by the unique perspective of an amicus who is himself litigating an alleged abuse of this very same federalization power, urges the Court to reverse the stay by focusing on these two crucial, unresolved issues.

The President's invocation of § 12406 was an act of bad faith and pretext, falling squarely within the Sterling exception to deference. The use of the inflammatory and legally baseless term "rebellion" to describe civil protests, combined with the strategic choice to use an obscure statute in an apparent attempt to bypass the political and legal scrutiny associated with the Insurrection Act, is powerful evidence of pretext. The pending litigation of amicus, which alleges that § 12406 was used as a tool for whistleblower retaliation against a single civilian, provides a chilling, real-world example of the statute's potential for "grotesque abuse" and underscores the necessity of judicial scrutiny.

Regardless of the legality of the initial call-up, the on-the-ground conduct of the federalized Guard must comply with the PCA, a non-discretionary criminal statute. This Court correctly noted that this issue was not decided below and expressed "no opinion on it." The government's own stated mission—the "protection" of federal property and personnel—creates a clear line.

9th Cir. Case No 25-3727                                             Page 6

Any actions by the Guard that crossed from this defensive posture into active law enforcement, such as patrolling city streets or controlling civilian crowds, would constitute a willful violation of the PCA. This is a question of fact and statutory interpretation, not executive discretion, that requires remand.

Finally, the Court's initial analysis of the Tenth Amendment was too narrow. The unilateral seizure of a state's primary emergency response force is not merely a policy dispute; it is an unconstitutional commandeering of a sovereign state's executive machinery, inflicting a separate and irreparable constitutional injury.

This Court should vacate its stay and remand to the district court to conduct the necessary factual inquiry into the President's bad faith and the Guard's compliance with the Posse Comitatus Act.

## ARGUMENT

### I. THE PRESIDENT'S ORDER IS LIKELY INVALID UNDER THE STERLING V. CONSTANTIN EXCEPTION FOR BAD FAITH AND PRETEXT

This Court's analysis correctly began with the high deference afforded to the President's judgment under Martin v. Mott, 25 U.S. (12 Wheat.) 19 (1827). But deference is not abdication. The primary path to victory for the Appellees lies not in re-litigating the facts of the Los Angeles protests, but in demonstrating that the President's action falls into the critical exception to deference that this Court itself identified: an action "conceived" not in good faith, but as a pretextual "act of mere oppression."

9th Cir. Case No 25-3727                                                    Page 7

## A. This Court Correctly Recognized that Deference to the Executive Is Not Absolute and Does Not Extend to Acts of Mere Oppression

In its stay order, this Court carefully cabined the Martin deference doctrine by citing Sterling v. Constantin, 287 U.S. 378 (1932). The panel quoted Sterling for the vital proposition that emergency measures must be "conceived in good faith" and that an executive order "may not stand if it is an act of mere oppression, an arbitrary fiat that overleaps the bounds of judgment." This was not a passing citation; it was an acknowledgment of a fundamental limit on executive power and an implicit invitation to the parties to address whether that limit was breached here.

The Sterling precedent, which involved a governor's pretextual use of the National Guard to enforce economic policy under the guise of martial law, is the precise tool for analyzing the facts of this case. It establishes that courts have not only the power, but the duty, to look behind an emergency proclamation to determine if it is a sham. As amicus argued below, deference must yield "in the face of alleged bad faith."

## B. The President's Invocation of § 12406 Was a Pretextual Abuse of Power

The evidence of bad faith and pretext is woven throughout the President's actions. First, the President's memorandum of June 7, 2025, characterized the Los Angeles protests as a "rebellion." This is a legally baseless and inflammatory claim. As the district court found, the events, while violent, fell "far short of 'rebellion,'" a term historically reserved for armed uprisings aimed at overthrowing the government. The use of this term was not a good-faith legal assessment but a rhetorical device designed to unlock the broadest possible emergency powers for political purposes.

Second, the very choice of statute—10 U.S.C. § 12406—is evidence of pretext. The Insurrection Act is the well-established, primary statutory vehicle for domestic military deployments. Section 12406, by contrast, is a "little-known federal law" that the Department of Justice has historically viewed as a mere "technical call-up authority that accompanies the Insurrection Act's" substantive provisions, not a standalone grant of power. By invoking this obscure provision, the administration appears to have been engaged in a legally dubious attempt to achieve the effects of an Insurrection Act deployment—federalizing a state's Guard without the governor's consent—while evading the political controversy and heightened legal scrutiny that a formal Insurrection Act invocation would entail. This is the essence of a pretextual action that "overleaps the bounds of judgment."

## C. The Pending Akerman Litigation Provides a Chilling, Real-World Illustration of Why This Court's Scrutiny for Bad Faith Is Essential

To understand the grave danger of allowing such pretextual invocations to go unchecked, the Court need look no further than the pending lawsuit of amicus curiae. In Akerman v. Nevada National Guard, Mr. Akerman alleges that the executive branch invoked the very same statute, 10 U.S.C. § 12406, as a pretext to retaliate against him for protected whistleblowing. He alleges that federalized National Guard officers from three states were deployed to subject him to "physical detention" and seize his property, culminating in his indefinite suspension from his tenured civilian post.

9th Cir. Case No 25-3727                                          Page 9

The Akerman case transforms the Sterling exception from a theoretical possibility into a documented and alarming reality. A side-by-side comparison of the government's justifications in the two cases is illuminating:

| Feature | *Newsom v. Trump* (N.D. Cal.) | *Akerman v. Nevada National Guard* (D. Nev.) |
|---|---|---|
| **Stated Public Exigency** | Large-scale civil unrest and protests against federal immigration enforcement in Los Angeles. | None stated beyond an alleged "emergency" to effectuate a personnel action against a single civilian federal employee. |
| **Statutory Authority Invoked** | 10 U.S.C. § 12406. | 10 U.S.C. § 12406. |
| **Alleged Military Activities** | Protection of federal personnel and property. | Physical detention of a civilian; seizure of his government equipment; execution of an adverse personnel action (indefinite suspension). |
| **Alleged Purpose of Action** | To "execute the laws of the United States" by protecting federal functions. | To retaliate against a protected whistleblower for disclosures of waste and mismanagement, constituting a "bad faith" and "pretextual" use of emergency power. |

9th Cir. Case No 25-3727                                            Page 10

This comparison crystallizes the danger. If the President's invocation of § 12406 is shielded from meaningful review, the statute becomes a tool for "grotesque abuse," available to any executive to punish political opponents or individual citizens under the thinnest of pretexts. The Akerman case demonstrates that the only meaningful check against such an "act of mere oppression" is a judiciary willing to apply the Sterling exception with vigor.

## II. THE CONDUCT OF THE FEDERALIZED GUARD MUST BE ANALYZED UNDER THE POSSE COMITATUS ACT, AN ISSUE THIS COURT EXPRESSLY RESERVED

This Court's most significant holding was its decision to expressly reserve judgment on the application of the Posse Comitatus Act, 18 U.S.C. § 1385. The panel stated: "nothing in our decision addresses the nature of the activities in which the federalized National Guard may engage.... We express no opinion on it." This creates the primary avenue for Appellees' success. The case must now pivot from the President's subjective state of mind to the objective, observable, and illegal actions of troops on the ground.

### A. The Posse Comitatus Act Is a Non-Discretionary Criminal Prohibition, Not a Guideline Subject to Executive Deference

The PCA is not a policy suggestion; it is a criminal statute. It makes it a felony to "willfully use any part of the Army or the Air Force... to execute the laws." When National Guard members are federalized under Title 10, they become part of the "Army" or "Air Force" for the purposes of the Act and are subject to its criminal penalties.

9th Cir. Case No 25-3727                                                    Page 11

The deference afforded under Martin v. Mott applies to the President's determination of an "exigency." It does not and cannot apply to the military's subsequent violation of a separate criminal law. The question is not whether the President had a good reason to act, but whether the actions of his subordinates were illegal under the PCA. This is a standard question of statutory interpretation and fact-finding, which is "emphatically the province and duty of the judicial department." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803).

## B. The Government's Own Narrow Justification for the Deployment Establishes the Boundary for a PCA Violation

The government has consistently stated that the Guard's mission was limited to the "protect[ion of] Federal property" and personnel. This narrow, defensive, and arguably permissible "military purpose" now serves as the legal standard against which the Guard's actual conduct must be measured.

"Executing the laws," by contrast, involves direct, active, and coercive participation in civilian law enforcement. This includes actions such as arrests, searches, seizures, and the general policing of civilian populations. Any action by the Guard in Los Angeles that went beyond the static, defensive protection of federal buildings and crossed into active crowd control, patrolling city streets, or directing civilian activities would presumptively violate the PCA.

9th Cir. Case No 25-3727                                                      Page 12

## C. Factual Development Is Required to Determine Whether the Guard's Actions Crossed the Line into Prohibited Law Enforcement

This Court noted that the district court found the PCA claim "premature" because Appellees had "not renewed it before us." The Court's express reservation of the issue is a clear signal that the claim is now ripe for consideration on a full factual record. The case must be remanded to allow Appellees to conduct discovery and present evidence on what the federalized troops actually did. The district court itself anticipated this, noting that Appellees could present additional evidence at the preliminary injunction hearing. The allegations in the Akerman case—involving the physical detention of a civilian and seizure of his property—are a stark reminder that the use of federalized troops to "execute the laws" is a tangible and present danger.

## III. THE UNILATERAL FEDERALIZATION OF THE CALIFORNIA NATIONAL GUARD INFLICTS A SEPARATE AND IRREPARABLE CONSTITUTIONAL INJURY UPON STATE SOVEREIGNTY

This Court treated the Appellees' Tenth Amendment claim as rising and falling with the statutory claim. This was an error. The federalization inflicted a distinct constitutional injury by commandeering the State of California's sovereign institutions.

9th Cir. Case No 25-3727                                                                Page 13

## A. The National Guard's Dual-Sovereignty Status Is a Cornerstone of American Federalism

The National Guard is a unique institution with a dual federal and state identity, a structure rooted in the Constitution's Militia Clauses (Art. I, § 8, cl. 15-16). In its state capacity, the Guard is commanded by the Governor and serves as the state's primary force for responding to domestic emergencies. This dual structure is a fundamental component of the constitutional balance of power.

## B. The Seizure of California's Emergency Response Force Constitutes Unconstitutional Commandeering

By seizing 4,000 members of the California National Guard over the Governor's objection, the President unconstitutionally commandeered the state's executive branch, in violation of the principles of New York v. United States, 505 U.S. 144 (1992), and Printz v. United States, 521 U.S. 898 (1997). The federal government did not merely preempt state policy; it seized the state's own personnel and resources, depriving California of its ability to respond to other potential crises like wildfires or earthquakes, as the district court correctly recognized. This is a per se irreparable injury to state sovereignty that cannot be counterbalanced by damage to federal property. It is a separate constitutional violation that provides an independent basis for reversing the stay.

9th Cir. Case No 25-3727                                                    Page 14

## CONCLUSION

For the foregoing reasons, amicus curiae Martin Akerman respectfully urges this Court to vacate its June 19, 2025, order granting a stay pending appeal, and to remand the case for further proceedings, including a full evidentiary hearing on the President's potential bad faith and the National Guard's compliance with the Posse Comitatus Act.

Dated: June 24, 2025

Respectfully submitted,

Martin Akerman
PO BOX 100057
Arlington, VA 22210
(202) 656-5601
makerman.dod@gmail.com