CASE NO. 25-3727

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

————————

GAVIN NEWSOM, in his official capacity as Governor of the State of California; STATE OF CALIFORNIA

*Plaintiffs and Appellees,*

vs.

DONALD TRUMP, in his official capacity as President of the United States; PETE HEGSETH, in his official capacity as Secretary of the Department of Defense; DEPARTMENT OF DEFENSE

*Defendants and Appellants.*

————————

Appeal From The United States District Court, Northern District of California, Case No. No. 3:25-cv-04870-CRB, Hon. Charles R. Breyer

————————

## BRIEF OF TWENTY-ONE SITTING MEMBERS OF THE UNITED STATES SENATE AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS AND APPELLEES GOVERNOR GAVIN NEWSOM AND STATE OF CALIFORNIA

————————

BIRD, MARELLA, RHOW, LINCENBERG, DROOKS &
NESSIM, LLP
Gary S. Lincenberg
Marc E. Masters
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
glincenberg@birdmarella.com
mmasters@birdmarella.com


ERWIN CHEMERINSKY
University of California, Berkeley School of Law
Law Building 215
Berkeley, California 94720-7200
Telephone: (510) 642-6483
echemerinsky@berkeley.edu

Attorneys for *Amici Curiae* Senator Adam B. Schiff and Senator Alex
Padilla, joined by 19 sitting U.S. Senators

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION AND STATEMENT OF INTEREST .......................... 1

ARGUMENT ................................................................... 6

I.     Section 12406 Must Be Interpreted In A Manner That Avoids Serious Constitutional Problems. .............................. 6

II.    The Powers Congress May Delegate To The President Under Section 12406 Are Limited By The Tenth Amendment's Anti-Commandeering Mandate ...................... 9

III.   The Powers Congress May Delegate To The President Under Section 12406 Are Also Limited By The Separation of Powers Doctrine. ........................................... 12

      A.     The Constitution Protects Against Excessive Accumulation Of Power In Any One Branch Of Government. ...................................................... 12

      B.     The Constitution Gives Congress The Exclusive Power To Call Forth State Militias. ........................... 12

      C.     Congress Delegated Authority To Call Forth State Militias To The President Under Section 12406 In Only Certain Limited Circumstances. ......... 13

IV.   The Ninth Circuit's Interpretation Of Section 12406, Which Provides Extreme Deference To The President, Is Erroneous Because Such An Interpretation Improperly Raises Serious Doubts As To Whether That Statute Is Constitutional. .................................... 15

      A.     The Ninth Circuit's Interpretation Is Flawed Because It Creates Serious Doubt As To Whether Section 12406 Violates The Tenth Amendment's Anti-Commandeering Mandate. .................................. 16

      B.     The Ninth Circuit's Interpretation Is Flawed Because It Creates Serious Doubt As To Whether Section 12406 Violates The Separation Of Powers Doctrine. ...................................................... 17

V.    That The Ninth Circuit's Ruling Allows The President To Use Section 12406 In A Manner That Lacks Historical Precedent Illustrates Just How Wrong Its Interpretation Of That Statute Is..........................................18

CONCLUSION ....................................................................20

CERTIFICATE OF COMPLIANCE PURSUANT TO  FED. R. APP. 32(A)(7)(B) AND CIRCUIT RULE 32-1...............................21

CERTIFICATE OF SERVICE...................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const.*
*Trades Council,*
  485 U.S. 568, 108 S. Ct. 1392, 99 L. Ed. 2d 645 (1988) ............ *passim*

*Gregory v. Ashcroft,*
  501 U.S. 452, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991) .................. 12

*McCulloch v. Maryland,*
  17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819) ...................................... 12

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
  584 U.S. 453, 138 S. Ct. 1461, 200 L. Ed. 2d 854 (2018) ......... 9, 10, 16

*New York v. United States,*
  505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992) .................. 11

*Newsom v. Trump,*
  141 F.4th 1032 (9th Cir. 2025) ...................................................... 3, 15

*Perpich v. Dep't of Def.,*
  496 U.S. 334, 110 S. Ct. 2418, 110 L. Ed. 2d 312 (1990) .................. 13

*Printz v. United States,*
  521 U.S. 898, 117 S. Ct. 2365, 138 L. Ed. 2d 914 (1997) ............. 10, 11

*Solid Waste Agency of Northern Cook County v. United*
*States Army Corps of Engineers,*
  531 U.S. 159, 121 S. Ct. 675, 148 L. Ed. 2d 576 (2001) ............ *passim*

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579, 72 S. Ct. 863, 96 L. Ed. 1153 (1952) ........................... 13

**Statutes**

10 U.S.C. § 12406 ................................................................. *passim*

## Other Authorities

U.S. Const. art. I ............................................................................... 1, 13

U.S. Const. art. IV .............................................................................. 1, 13

U.S. Const. amend. X ..................................................................... *passim*

## <u>INTRODUCTION AND STATEMENT OF INTEREST</u>[1]

As part of a larger pattern of President Donald J. Trump usurping powers reserved for the States and Congress, this case raises one of the most important tests to date: can President Trump unilaterally deploy the National Guard on domestic soil at his whim in spite of myriad constitutional guardrails against such action? In federalizing 4,000 California National Guard troops for domestic law enforcement against Governor Gavin Newsom's wishes, and without showing a genuine inability to enforce federal laws with the regular forces (*i.e.*, state and federal law enforcement), President Trump ignored clear historical precedent, violated the Tenth Amendment's anti-commandeering mandate, and contravened the provisions of Articles I and IV of the Constitution assigning power over militias to Congress.

In virtually all prior instances in which a President has called forth the National Guard without a request from the Governor, the President did so only after the State's Governor refused to act to enforce

---

[1] *Amici* certify that all of the parties to this action have consented to the filing of this brief. Fed. R. App. P. 29(a)(2). Also, *Amici* certify that no party or counsel for any party has authored this brief in whole or in part, participated in its drafting, or made any monetary contributions intended to fund preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(E).

federal law or took action in direct conflict with federal law. The last instance in which a President federalized the National Guard without a Governor's consent occurred in 1964 when Alabama Governor George Wallace ordered the Alabama Highway Patrol to physically prevent Rev. Dr. Martin Luther King, Congressman John Lewis, and other civil rights advocates from peacefully marching from Selma to Montgomery. In response, President Lyndon B. Johnson justifiably took action to protect the marchers' First and Fourteenth Amendment rights.[2]

Here, in stark contrast, there was no directive from Governor Newsom to federal or state law enforcement to flout federal law. Rather, Governor Newsom and Los Angeles Mayor Karen Bass indisputably acted to quell the very civil unrest that the President claims triggered his mobilization of the National Guard. Public statements made by President Trump and his agents, as well as the manner in which the National Guard was deployed in Los Angeles, demonstrate that President Trump acted in bad faith when he invoked 10 U.S.C. § 12406 to mobilize the National Guard. Our concern that President Trump will

---

[2] President Johnson also invoked the Insurrection Act in his Executive Order, which President Trump did not do here.

continue to act in bad faith and abuse his power is borne out by his recent deployment of state militias to Washington, D.C. and his stated intent to deploy state militias elsewhere (like Chicago and Baltimore).

To protect our democracy against the threat of a tyrannical-minded President, the Founders created a system of limitations on the President's powers. The Tenth Amendment prohibits a President from commandeering state officials to enforce federal programs. And the separation of powers doctrine prevents a President from co-opting congressional powers. The Constitution expressly reserves power over the militia (*i.e.*, the National Guard) to Congress, not the President. Through Section 12406, Congress delegated to the President the power to federalize the National Guard, *but only under certain limited circumstances not present here*.[3]

In overturning the District Court's temporary restraining order in this case, the Ninth Circuit interpreted Section 12406 in a manner that creates serious doubt as to whether that statute comports with the

---

[3] In a recent opinion in this case, the district court chronicles how the decision to declare our independence from England, the drafting of our Constitution, and the drafting of later statutes were informed by the threat of militias deployed on our streets. *Newsom v. Trump*, 3:25-cv-04870 -CRB, Dkt. 176 at 17-22 (N.D. Cal. Sept. 2, 2025).

aforementioned constitutional limits on the President. In particular, the Ninth Circuit interpreted Section 12406 as requiring such extreme deference to the President that it does not qualify as any form of meaningful judicial review. The limits on the President built into Section 12406 to ensure that that statute remains constitutionally sound (*i.e.*, that the President may only call forth the National Guard under truly unusual and exigent circumstances) risk being rendered hollow such that they cannot be judicially enforced against a President run amuck. As interpreted to provide such extreme deference to the President, Section 12406 does not prevent the President from commandeering state officials in violation of the Tenth Amendment or from usurping Congress's power over the National Guard in violation of the separation of powers doctrine. Thus, the Ninth Circuit failed to adhere to the principle of construing statutes in a manner that avoids constitutional doubt. In other words, the Ninth Circuit's interpretation of Section 12406 as granting extreme deference to the President raises serious doubt as to whether that statute comports with the Tenth Amendment and the separation of powers doctrine. As such, the Ninth Circuit's interpretation is in error.

The courts are the last resort to prevent the President from exceeding his constitutional powers. Failure to interpret Section 12406 as providing meaningful judicial review of the President's unilateral decision to call forth the National Guard would usher in an era of unprecedented, dangerous executive power. To paraphrase the warning usually attributed to Edmund Burke: the only thing needed for the President to triumph over the Constitution is for the courts to do nothing.

*Amici* are the twenty-one sitting United States Senators identified in Appendix A, including both Senators for the State of California joined by nineteen Senators from States to which the President has threatened to deploy the National Guard and States that are at risk of the same. As sitting U.S. Senators elected by the citizens of their States to serve in a separate, independent branch of government, *Amici* have a significant interest in protecting both their constituents and Congress from the President's *ultra vires* actions. Moreover, because the interpretation of an important congressional statute is at issue, and because this statute defines the scope of a congressional delegation of some of its

constitutional power over the militia, *Amici* have an institutional

interest in the outcome of this case.

## ARGUMENT

## I. Section 12406 Must Be Interpreted In A Manner That Avoids Serious Constitutional Problems.

Section 12406, through which Congress delegates some of its

constitutional powers to the President under limited circumstances,

must be interpreted in a manner that keeps the President within

constitutional boundaries.[4] Otherwise, serious questions arise as to

whether Section 12406 violates the Tenth Amendment anti-

commandeering mandate and the separation of powers doctrine. Indeed,

one of the Supreme Court's "cardinal rules" of statutory interpretation –

one that "has for so long been applied by this Court that it is beyond

debate" – holds that where an otherwise acceptable construction of a

statute would raise serious constitutional problems, the Court will

construe the statute to avoid such problems (unless such construction is

plainly contrary to the intent of Congress). *Edward J. DeBartolo Corp.*

---

[4] This brief does not address the legality of President Trump's deployment of the National Guard or Marines under the Posse Comitatus Act. District Judge Breyer's recent opinion addressing this issue has been appealed by the President, but it is not currently at issue at this stage of the proceedings in this Court.

*v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397–98, 99 L. Ed. 2d 645 (1988).

In *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 531 U.S. 159, 121 S. Ct. 675, 148 L. Ed. 2d 576 (2001) ("*SWANCC*"), the Supreme Court addressed the Migratory Bird Rule (the "MB Rule") issued by the U.S. Army Corps of Engineers (the "Corps") under which the Corps asserted jurisdiction under the Clean Water Act to require permits for the discharge of dredged material into intrastate waters used as habitats by migratory birds. *SWANCC*, 531 U.S. at 163–64. The MB Rule applied even to small, isolated ponds located entirely within a single State, such as those located in the abandoned sand and gravel pit at issue there. *Id.* at 163–65. The Court reasoned that, "[w]here an administrative interpretation of a statute invokes the outer limits of Congress' power, [it] expect[s] a clear indication that Congress intended that result," and that "[t]his concern is heightened where the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power." *Id.* at 172–73. Relying in part on its earlier decision in *Edward J. DeBartolo Corp.*, the Supreme Court rejected the

Corps' interpretation because (1) the MB Rule "raise[d] significant constitutional questions" with respect to Congress' authority under the Commerce Clause; (2) Congress had not clearly stated "that it intended [the Clean Water Act] to reach an abandoned sand and gravel pit"; and (3) the Corps' interpretation of the Clean Water Act "would result in a significant impingement of the States' traditional and primary power over land and water use." *Id.* at 173–74.

Here, the Ninth Circuit interpreted Section 12406 in a manner that is extremely deferential to the President and leaves no room for meaningful judicial review of the President's actions and whether they conform to the limiting language of the statute. Consequently, limiting language within Section 12406 (which requires a genuine inability to enforce federal laws with the regular forces, such as state and federal law enforcement) is effectively hollowed out, leaving no meaningful statutory limits on the President's discretion and casting real doubt on whether the statute complies with the Tenth Amendment anti-commandeering mandate and the separation of powers doctrine. Accordingly, the Ninth Circuit's interpretation violates clear Supreme Court precedent because it "raise[s] significant constitutional

8

questions". *SWANCC*, 531 U.S. 159 at 173-74; *see also Edward J. DeBartolo Corp.*, 485 U.S. 568 at 588 (construing a statute so as to avoid "serious constitutional questions").

*Amici* seek to ensure that Section 12406 is interpreted in a manner that avoids serious constitutional problems and protects against the President's abuse of the very powers that Congress has delegated in only a *limited* fashion.

## II. The Powers Congress May Delegate To The President Under Section 12406 Are Limited By The Tenth Amendment's Anti-Commandeering Mandate

The Tenth Amendment provides: "The powers not delegated to the United States **by the Constitution**, nor prohibited by it to the States, are reserved to the States respectively, or to the people." (Emphasis added.) Accordingly, the Supreme Court has determined that the Tenth Amendment restricts the federal government's power to (1) commandeer States to require or prohibit certain acts, and (2) compel State officers to take certain actions. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 472, 138 S. Ct. 1461, 1476, 200 L. Ed. 2d 854 (2018) (quoting *New York v. United States*, 505 U.S. 144, 166, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992) (The Constitution "confers upon Congress the

power to regulate individuals, not States."). Under the Tenth
Amendment and other provisions of the Constitution, Congress lacks
the power to issue orders directly to the States: "[T]he Federal
Government may not compel the States to implement, by legislation or
executive action, federal regulatory programs." *Printz v. United States*,
521 U.S. 898, 925, 117 S. Ct. 2365, 138 L. Ed. 2d 914 (1997).

Moreover, "Congress cannot circumvent that prohibition by
conscripting the State's officers directly." *Id.* at 935. "The Federal
Government may neither issue directives requiring the States to
address particular problems, nor command the States' officers, or those
of their political subdivisions, to administer or enforce a federal
regulatory program. It matters not whether policymaking is involved,
and no case-by-case weighing of the burdens or benefits is necessary;
such commands are fundamentally incompatible with our constitutional
system of dual sovereignty." *Id.* "This rule applies not only to state
officers with policymaking responsibility but also to those assigned
more mundane tasks." *Murphy*, 584 U.S. at 473.

No court has had the opportunity to consider circumstances where
Section 12406 might violate the Tenth Amendment's anti-

commandeering mandate because no President has invoked Section 12406 to call forth the National Guard against a Governor's wishes since the Supreme Court first developed this anti-commandeering jurisprudence in *New York v. United States*. 505 U.S. 144.

Here, the President compelled the Governor and the State, against their judgment, to turn over National Guard troops to the President without justification and without establishing an inability to enforce federal law with the regular forces. That is commandeering. In *Printz v. United States*, the federal government forced state and local sheriffs to do background checks before the purchase of firearms. The Court held that was commandeering, in violation of the Tenth Amendment. 521 U.S. at 925. Forcing the State of California's National Guard into federal service is even more dramatically conscripting a State into being an arm of the federal government where, as here, it is done without justification and without establishing an inability to enforce federal law with the regular forces.

III. **The Powers Congress May Delegate To The President Under Section 12406 Are Also Limited By The Separation of Powers Doctrine.**

A. **The Constitution Protects Against Excessive Accumulation Of Power In Any One Branch Of Government.**

The separation of powers is a bedrock constitutional principle. As James Madison explained in Federalist 47: "The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny." Thus, to protect individual liberty, the Founders designed the Constitution to ensure "separation and independence of the coordinate branches of the Federal Government," which "prevent[s] the accumulation of excessive power in any one branch." *Gregory v. Ashcroft*, 501 U.S. 452, 458, 111 S. Ct. 2395, 2400, 115 L. Ed. 2d 410 (1991). To this end, the powers of each branch of the federal government are expressly enumerated in the Constitution. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405, 4 L. Ed. 579 (1819).

B. **The Constitution Gives Congress The Exclusive Power To Call Forth State Militias.**

The Constitution empowers Congress, not the President, to authorize the militia (*i.e,* the National Guard) to be mobilized to execute

12

federal law. Art. IV, § 4 of the Constitution provides: "The United States

… shall protect each [State] against Invasion; and on Application of the

Legislature, or of the Executive (when the Legislature cannot be

convened) against domestic Violence." In addition, two clauses of Article

I—clauses 15 and 16 of § 8—are commonly described as "the Militia

Clauses" and place power over state militias squarely in the hands of

Congress:

> "The Congress shall have Power …
> "To provide for calling forth the Militia to execute the Laws of the
> Union, suppress Insurrections and repel Invasions;
> "To provide for organizing, arming, and disciplining, the Militia,
> and for governing such Part of them as may be employed in the
> Service of the United States, reserving to the States respectively,
> the Appointment of the Officers, and the Authority of training the
> Militia according to the discipline prescribed by Congress."

*Perpich v. Dep't of Def.*, 496 U.S. 334, 337 n.3, 110 S. Ct. 2418, 2421, 110

L. Ed. 2d 312 (1990).

### C. Congress Delegated Authority To Call Forth State Militias To The President Under Section 12406 In Only Certain Limited Circumstances.

The President's authority to act in any context necessarily

"stem[s] either from an act of Congress or from the Constitution itself."

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585, 72 S. Ct.

863, 866, 96 L. Ed. 1153 (1952). In this case, the President relied upon the powers Congress delegated to him through Section 12406.

In Section 12406, which is an amended version of the Militia Act of 1903 (Dick Act), Congress delegated authority to mobilize the National Guard to the President under certain carefully delineated and limited circumstances in which the President is genuinely unable to execute federal law with regular forces (such as state and federal law enforcement):

> "Whenever--... (3) the President is **unable**[5] with the **regular forces** to execute the laws of the United States; the President may call into Federal service members and units of the National Guard of any State in such numbers as he considers necessary to repel the invasion, suppress the rebellion, or execute those laws. Orders for these purposes shall be issued through the governors of the States or, in the case of the District of Columbia, through the commanding

---

[5] In their Answering Brief submitted on September 2, 2025 in this case, Plaintiffs Gavin Newsom and the State of California discuss how Congress overhauled certain statutory language to change the standard from the subjective "impracticable in the judgment of the President" to the more stringent and objective "unable." Answering Brief at pp. 5-6. Congress' change from a deferential, subjective standard to a more objective standard further demonstrates its intent not to grant the type of broad deference to the President that was sanctioned by this Court's earlier opinion.

14

general of the National Guard of the District of Columbia."
10 U.S.C. § 12406 (emphasis added).

Accordingly, under the separation of powers doctrine, the President may not call forth the National Guard unless the President acts within the limits that Congress imposed on the President as part of its statutory delegation of that power to the President. In other words, the President must have a genuine inability to execute federal laws with regular forces (like state and federal law enforcement), or the President's deployment of the National Guard violates the separation of powers doctrine.

## IV. The Ninth Circuit's Interpretation Of Section 12406, Which Provides Extreme Deference To The President, Is Erroneous Because Such An Interpretation Improperly Raises Serious Doubts As To Whether That Statute Is Constitutional.

The Ninth Circuit ruled that its review of the President's decision to federalize members of the California National Guard under Section 12406 must be one of extreme deference. *Newsom v. Trump*, 141 F.4th 1032, 1047–52 (9th Cir. 2025). As a result, the opinion leaves no meaningful way to judicially enforce the Section 12406 limits on Congress' statutory delegation of its constitutional power over the militia. That is a serious problem because, for that statute to pass

15

constitutional muster, courts must have the ability to enforce its limiting language and ensure that the President is genuinely unable to enforce federal law with the regular forces, such as state and federal law enforcement.

### A. The Ninth Circuit's Interpretation Is Flawed Because It Creates Serious Doubt As To Whether Section 12406 Violates The Tenth Amendment's Anti-Commandeering Mandate.

Without a meaningful way for courts to ensure that the President is truly unable to enforce federal law with the regular forces, Section 12406 now allows the President to commandeer State officers to carry out his immigration policies. California's Governor is a State officer with policymaking responsibilities. *Murphy*, *supra*, 584 U.S. at 473. The Adjutant General is a State officer assigned more operational tasks. *Id.* at 473. Prior to being called into federal service, California's National Guardsmen also are State officers assigned more operational, rather than policymaking, responsibilities. *Id.* Consequently, the President invoked Section 12406 to commandeer these officers in violation of the Tenth Amendment because there was no justification and no established inability to enforce federal law with the regular forces. *At a minimum*, the extreme deference to the President that the Ninth

16

Circuit read into Section 12406, which disallows meaningful judicial review of whether the President has exceeded the limits built into that statute, *creates serious doubts* as to whether the independent invocation of that statute can comply with the Tenth Amendment's anti-commandeering mandate. By manufacturing this constitutional problem, the Ninth Circuit's interpretation is wrong. *Edward J. DeBartolo Corp.*, 485 U.S. at 575; *SWANCC*, 531 U.S. at 172-74.

**B. The Ninth Circuit's Interpretation Is Flawed Because It Creates Serious Doubt As To Whether Section 12406 Violates The Separation Of Powers Doctrine.**

Without a meaningful way for courts to ensure that the President is truly unable to enforce federal law with the regular forces, Section 12406 now allows the President to usurp power over militias even though the Constitution assigns that power to Congress. *At a minimum*, the extreme deference to the President that the Ninth Circuit read into Section 12406, which disallows meaningful judicial review of whether the President has exceeded the limits built into that statute, *creates serious doubts* as to whether that statute complies with the separation of powers doctrine. By manufacturing this constitutional problem, the

Ninth Circuit's interpretation is wrong. *Edward J. DeBartolo Corp.*, 485 U.S. at 575; *SWANCC*, 531 U.S. at 172-74.

## V. That The Ninth Circuit's Ruling Allows The President To Use Section 12406 In A Manner That Lacks Historical Precedent Illustrates Just How Wrong Its Interpretation Of That Statute Is.

President Trump's actions have no support in historical precedent. California Governor Newsom never ordered the California National Guard or state law enforcement to defy federal law. By contrast, Presidents have historically federalized the National Guard when requested by a state's Governor or in the rare circumstances where a Governor has defied a federal court order or obstructed civil rights laws. For example, President Dwight D. Eisenhower and President Lyndon B. Johnson federalized the National Guard only after the Governors in Arkansas and Alabama defied federal law.[6]

Specifically, in 1957, President Eisenhower federalized the Arkansas Guard only after Arkansas Governor Orval Faubus ordered the Arkansas National Guard to surround Central High School in Little

---

[6] President Eisenhower and President Johnson also invoked the Insurrection Act in their Executive Orders, which President Trump did not do here.

18

Rock to keep nine African American students from entering and integrating the school. And, as mentioned above, in 1964 President Johnson federalized the Alabama Guard only after Alabama Governor George Wallace ordered Alabama Highway Patrol Chief Col. Al Lingo to use whatever measures necessary (including violence) to prevent the peaceful march from Selma to Montgomery in 1964. It is easy to see how President Eisenhower and President Johnson acted within the limits of Section 12406 because, in each instance, the Governor's actions in defiance of federal law rendered the President unable to execute the laws of the United States with regular forces.

In stark contrast, there is no credible argument that President Trump was unable to execute federal law with regular forces. His invocation of Section 12406 here clearly defies historical precedent. This very fact highlights that the Ninth Circuit's interpretation of Section 12406 has created serious constitutional doubt about that statute and its use here, and this constitutional problem itself renders the Ninth Circuit's interpretation erroneous. *Edward J. DeBartolo Corp.*, 485 U.S. at 575; *SWANCC*, 531 U.S. at 172-74.

## **CONCLUSION**

For the reasons stated herein, the Senators urge this Court to reverse its interpretation of Section 12406 as providing extreme deference to the President and instead adopt a standard of judicial review that avoids questions about that statute's constitutional validity.

DATED:  September 9, 2025     Gary S. Lincenberg
Marc E. Masters
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By:        */s/ Gary S. Lincenberg*
Gary S. Lincenberg
Attorneys for *Amici Curiae* Sen.
Adam B. Schiff and Sen. Alex Padilla



By:        */s/ Erwin Chemerinsky*
Erwin Chemerinsky
Attorney for *Amici Curiae* Sen. Adam
B. Schiff and Sen. Alex Padilla

## **CERTIFICATE OF COMPLIANCE PURSUANT TO**
## **FED. R. APP. 32(A)(7)(B) AND CIRCUIT RULE 32-1**

Pursuant to Fed. R. App. P. 32 (a)(7)(B) and Ninth Circuit Rule

32-1, I certify that the attached brief is proportionally spaced, has a

typeface of 14 points, and contains 3,793 words.


DATED:  September 9, 2025     Gary S. Lincenberg
                             Marc E. Masters
                             Bird, Marella, Rhow,
                             Lincenberg, Drooks & Nessim, LLP



                             By:  _____*/s/ Gary S. Lincenberg*_____
                                      Gary S. Lincenberg
                                  Attorneys for *Amici Curiae* Sen.
                                  Adam B. Schiff and Sen. Alex Padilla

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 9, 2025, an electronic copy of the foregoing was filed with the Clerk of this Court using the CM/ECF system, and that all parties will be served through that system.

DATED:  September 9, 2025   Gary S. Lincenberg
Marc E. Masters
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By: _____*/s/ Gary S. Lincenberg*_____
Gary S. Lincenberg
Attorneys for *Amici Curiae* Sen.
Adam B. Schiff and Sen. Alex Padilla

# APPENDIX A

## LIST OF *AMICI CURIAE* JOINING THIS BRIEF

Sen. Adam B. Schiff          Sen. Alex Padilla

Sen. Angela D. Alsobrooks

Sen. Michael F. Bennet

Sen. Richard Blumenthal

Sen. Lisa Blunt Rochester

Sen. Cory A. Booker

Sen. Tammy Duckworth

Sen. Richard J. Durbin

Sen. John W. Hickenlooper

Sen. Mazie K. Hirono

Sen. Andy Kim

Sen. Amy Klobuchar

Sen. Edward J. Markey

Sen. Jeff Merkley

Sen. Bernard Sanders

Sen. Chris Van Hollen

Sen. Elizabeth Warren

Sen. Peter Welch

Sen. Sheldon Whitehouse

Sen. Ron Wyden