No. 25-3727

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GAVIN NEWSOM, *et al.*,
    *Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *et al.*,
    *Defendants-Appellants*.

**On Appeal from the United States District Court
for the Northern District of California**
No. 3:25-cv-04870
The Honorable Charles R. Breyer

## REPLY IN SUPPORT OF MOTION TO VACATE STAY OR, IN THE ALTERNATIVE, FOR INJUNCTION PENDING APPEAL

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
HELEN H. HONG
  *Principal Deputy*
  *Solicitor General*
THOMAS S. PATTERSON
MICHAEL L. NEWMAN
  *Senior Assistant*
  *Attorneys General*
ANYA BINSACCA
MARISSA MALOUFF
JAMES E. STANLEY
  *Supervising Deputy*
  *Attorneys General*

CHRISTOPHER D. HU*
  *Deputy Solicitor General*
BRENDAN M. HAMME
BARBARA HORNE-PETERSDORF
MEGHAN H. STRONG
JANE REILLEY
  *Deputy Attorneys General*
HALEY L. AMSTER
  *Associate Deputy*
  *Solicitor General*

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3917
Christopher.Hu@doj.ca.gov
*Attorneys for Plaintiffs-Appellees*

October 20, 2025

## TABLE OF CONTENTS

**Page**

Introduction ............................................................................................... 1

Argument .................................................................................................. 3

    I.    The Court should vacate the stay pending appeal ...................... 3

    II.   Alternatively, the Court should issue an injunction pending appeal ........................................................................................ 7

Conclusion ............................................................................................. 13

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Doe #1 v. Trump*
   944 F.3d 1222 (9th Cir. 2019) ................................................................... 6

*Illinois v. Trump*
   2025 WL 2886645 (N.D. Ill. Oct. 10, 2025) ......................................... 5, 10

*Illinois v. Trump*
   2025 WL 2937065 (7th Cir. Oct. 16, 2025) ................................ 2, 6, 10, 12

*Laird v. Tatum*
   408 U.S. 1 (1972) ........................................................................................ 7

*Luther v. Borden*
   48 U.S. (7 How.) 1 (1849) ........................................................................ 11

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
   810 F.3d 631 (9th Cir. 2015) ...................................................................... 8

*Sterling v. Constantin*
   287 U.S. 378 (1932) .................................................................................... 3

*Whaley v. Belleque*
   520 F.3d 997 (9th Cir. 2008) ...................................................................... 9

**STATUTES**

10 U.S.C. § 12406 ............................................................................... 2, 7, 9, 10

18 U.S.C. § 111 ....................................................................................... 4

Pub. L. No. 119-21, § 100052 (2025) ............................................................. 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I
   § 8, cls. 15-16 ...................................................................................... 1
   § 9, cl. 7 ............................................................................................... 4

**OTHER AUTHORITIES**

Braver & Dehn, *Deference Due?*, The Volokh Conspiracy (Oct. 14, 2025), https://tinyurl.com/49kvcs9w ............................................... 10, 11

The Federalist No. 29 (Alexander Hamilton) ...................................................... 6

Vladeck, *Bonus 183: Martin v. Mott*, One First (Oct. 16, 2025), https://tinyurl.com/4btfztpe ........................................................... 10

Vladeck, Note, *Emergency Power and the Militia Acts*, 114 Yale L.J. 149 (2004) .......................................................................... 9

## INTRODUCTION

Defendants concede that "this Court may vacate its prior orders when the 'facts have changed sufficiently.'" Opp. 12. They also acknowledge that circumstances have changed substantially since the Court granted a stay. In defendants' words, "the conditions in Los Angeles have improved," Opp. 5; "[p]rotests are now less frequent, less violent, and generally pose a less significant risk to federal personnel and property," *id.*; and defendants have "*responded* to that improvement in conditions by dramatically reducing the Guard's numbers and activities," including by sending some 200 members of California's Guard to Oregon and 14 to Illinois, *id.* at 9, 19; SA8. Indeed, defendants nowhere dispute that they planned in early October to send the entirety of the State's federalized battalion—"all 300 federalized troops," A-409—out of California. In these circumstances, defendants can no longer make the showing that this Court previously deemed sufficient to support a stay: that federalized Guard troops were needed *in Los Angeles*—or even in California—to protect federal agents and property. Stay Order 38-39.

Defendants' principal response is that the State has little to complain about because the number of federalized troops has fallen. *See, e.g.*, Opp. 2, 12, 16-17. But *any* federalization of a State's National Guard is historically rare, constitutionally extraordinary, *see* U.S. Const. art. I, § 8, cls. 15-16, and deeply

1

harmful to state sovereign interests. *See Illinois v. Trump*, 2025 WL 2937065, at *5 (7th Cir. Oct. 16, 2025). And whatever defendants' needs may now be in Portland or Chicago, *see, e.g.*, Opp. 19-20, defendants do not need a stay of the district court's injunction in *this* case to deploy federalized Guard forces to those cities. They can instead issue—and have issued—separate federalization orders attempting to deploy members of the National Guard in those cities. Opp. 6-8. Plaintiffs do not challenge those orders here. All that plaintiffs challenge here is defendants' assertions that they have a continuing need for the National Guard in Los Angeles sufficient to satisfy the requirements of Section 12406.

Defendants also advance the remarkable claim that there is "*no time limit* on federalization." Opp. 14 (emphasis added). But even the President acknowledged in his June 7 memorandum that federalization under Section 12406 must be "temporar[y]." ER-45. The text, structure, and history of the statute confirm that basic principle. As this Court previously recognized, Section 12406 authorizes federalization "[w]henever" certain "unusual and extreme exigencies" exist, Stay Order 22, 33, *not* when those exigences have passed. Our Framers made clear that they intended for control of state militias to rest primarily at the state level, not with the federal government. *See, e.g.*, Answering Br. 3-4. Where, as here, the President can no longer reasonably conclude that the basis for federalization continues to exist, it must come to an end. At a minimum, when circumstances—

2

and a President's own words—reveal that a President is no longer operating "'*in good faith*, in the face of the emergency and directly related to the quelling of the disorder or the prevention of its continuance,'" a court must be able to bring that federalization to an end. Stay Order 31 (quoting *Sterling v. Constantin*, 287 U.S. 378, 399-400 (1932)). Defendants' extreme view of the statute would leave no room for that important consideration. The Court should vacate its stay pending appeal or grant an injunction, thereby returning California's Guard to state control.

## ARGUMENT

### I. THE COURT SHOULD VACATE THE STAY PENDING APPEAL

As detailed in plaintiffs' motion, *see* Mot. 9-16, changed circumstances undercut any claim by defendants to the sort of irreparable harm that would justify a continuing stay of the district court's injunction. In mid-June, the Court concluded that defendants would suffer "significant" harms without a stay, pointing to disturbances and violence in Los Angeles that resulted in damage to federal property and risks to the safety of federal personnel. Stay Order 38-39. Defendants now assert that "[r]emoving the federalized members" of California's Guard would lead "to the same irreparable injury the stay panel outlined previously." Opp. 3. But defendants fail to substantiate that claim.

Defendants point to just two October incidents in the Los Angeles area. The first involved an individual who threatened an FPS Inspector; the second involved

3

an individual who assaulted an officer with a high-powered laser. *See* Opp. 5; SA18-19. Two incidents of ordinary—even serious—federal crimes, *e.g.*, 18 U.S.C. § 111, are not the sort of "unusual and extreme exigencies," Stay Order 33, that would require military support to repel. And it is not the job of the military to help federal agencies, such as the Federal Protective Service, "reduce its staffing levels." *E.g.*, SA19. Defendants acknowledge that FPS and ICE are capable of "surg[ing] [agents] to respond to emergency situations." SA20; *see also* SA14. If that is not "a practical ongoing solution" because of a long-term "drain on [agency] resources," SA14, the appropriate answer in our constitutional framework is for the President to ask Congress to expand those agencies' budgets, not to commandeer the States' National Guard for federal service. *See* U.S. Const. art. I, § 9, cl. 7; *see, e.g.*, Pub. L. No. 119-21, § 100052 (2025) (tripling ICE budget).

Defendants also point to "violence and threats [that] have been a major problem in other jurisdictions." Opp. 20; *see also id.* at 6-8. But circumstances in other cities cannot justify a continued stay in this proceeding. Just a few weeks ago, defendants represented to this Court that "[t]he conditions in Portland that warranted federalization and deployment of the Guard are *irrelevant* to the deployment of the Guard in Los Angeles." C.A. Dkt. 119.1 at 1 (emphasis added). They also insisted that circumstances outside of California have "*no bearing* on the resolution of this challenge." *Id.* (emphasis added). They cannot turn around and

4

say precisely the opposite today. Any harms in Portland, Chicago, or other cities are properly addressed through federalization orders tailored to the circumstances in those jurisdictions.[1] Because the district court's injunction here would have no effect on such orders, *see* ER-37-38, conditions in those cities provide no basis for maintaining the stay in this case.

Defendants mischaracterize plaintiffs' motion as an effort to seek "judicial review of the 'number[]' of forces the President 'considers necessary' to enforce the laws." Opp. 13. That is not plaintiffs' argument. Rather, because defendants are prepared to "redeploy[]" (Opp. 22) all federalized troops out of California, *see* A-409, they cannot be irreparably injured by vacating a stay of the district court's order prohibiting defendants "from deploying members of the California National Guard in Los Angeles." ER-37. At a minimum, defendants can claim no irreparable harm from a partial vacatur of the stay, preserving it only insofar as California's federalized Guardsmen are needed for and engaged in the protection of federal property in the Los Angeles area. Mot. 15-16.

---

[1] *See, e.g.*, A-375 (discussing Sept. 28 order federalizing Oregon Guard); *but see* A-391 (finding circumstances did not support federalization in Portland); *see also Illinois v. Trump*, 2025 WL 2886645, at *4 (N.D. Ill. Oct. 10, 2025) (discussing Oct. 4 order federalizing Illinois Guard); *but see id.* at *5 (finding defendants' declarants about the circumstances in Chicago not "reliable").

5

With respect to the other equitable considerations, defendants are wrong that the decreased number of federalized troops or their transportation to other States "dramatically undercut" California's harms. Opp. 18, 21. The Court has properly observed that the State retains "significant interests" in the "constitutional balance of power between federal and state government," Stay Order 39—interests that are undoubtedly implicated whenever the federal government federalizes the State's militia. *See Illinois*, 2025 WL 2937065, at *5. And far from "redress[ing]" plaintiffs' injuries (Opp. 21), defendants' transportation of troops to other States without California's consent greatly exacerbates the State's sovereign harm. *Cf.* The Federalist No. 29 (Alexander Hamilton) (arguing Antifederalists were "absurd" to suggest the calling forth power could allow the "militia of Virginia" to "be dragged from their homes five or six hundred miles, to tame the republican contumacy of Massachusetts").

Finally, defendants argue that vacating the stay would "upset th[e] status quo." Opp. 11. But preservation of the status quo is the central consideration in evaluating whether to grant an *administrative* stay; it is not a dispositive consideration for a stay pending appeal. *See, e.g.*, *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019). In any event, defendants agree that plaintiffs challenged the federalization order "[a]lmost immediately after the President federalized the California Guard." Opp. 4. And while defendants invoke "the

6

status quo [of] the past four months," Opp. 11, they entirely ignore that until June 7 of this year, the Nation had never in its history seen a President invoke Section 12406 to federalize a State's National Guard over the objections of the State's Governor. Vacating the stay and allowing the district court's injunction to take effect would restore *that* longstanding tradition. *See generally Laird v. Tatum*, 408 U.S. 1, 15 (1972).

II. **ALTERNATIVELY, THE COURT SHOULD ISSUE AN INJUNCTION PENDING APPEAL**

For similar reasons, defendants' arguments against an injunction blocking the prolonged federalization of California's National Guard lack merit. As plaintiffs explained in their motion, defendants issued an order in early August extending the federalization an additional 90 days. *See* Mot. 6. On October 16, defendants issued another order that appears to further extend federalization through February 2026, more than eight months after the events that initially prompted the federalization. *See* A-455 ("[T]he Secretary of War has directed the extension of orders for all California (CA) National Guard (NG) units called into Federal service … from November 4, 2025 to February 2, 2026.").

1. Plaintiffs have explained that the circumstances on the ground in Los Angeles eliminate any "colorable basis" for federalizing the Guard to protect federal law enforcement or property in California. Mot. 16-19. Plaintiffs explained that even under the "highly deferential standard of review" applied by

7

this Court, which allows for actions "within a 'range of honest judgment,'" Stay Order 31, 33, defendants' efforts (through the August 5 and now October 16 orders) to extend the federalization of California's Guard in Los Angeles fail to satisfy that standard.

Beyond a brief discussion of the two incidents discussed above, *supra* pp. 3-4, defendants make no attempt to justify the orders extending federalization through an examination of the circumstances in Los Angeles at the time those orders were issued. Instead, they contend that the orders are not reviewable at all on several grounds. None is correct.

First, defendants argue that this Court "lacks jurisdiction to address any request for new injunctive relief on appeal" because plaintiffs have not "amended the[] complaint to seek such relief." Opp. 15-16. But plaintiffs predicted the possibility that defendants would issue further unlawful orders and expressly sought relief with respect to "any future orders" calling California's Guard into service. D.Ct. Dkt. 1 at 21. In any event, there need only be a "sufficient nexus" between the claims in a complaint and the claims in a motion for injunctive relief. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* As

8

defendants have elsewhere stated, they view the injunctive relief sought here to be "functionally the same" and "based on virtually identical grounds" as the injunction that plaintiffs initially sought in this litigation. A-357, 359. Defendants cannot reverse that position now. *Cf. Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (under doctrine of judicial estoppel, a party cannot "reverse its position in order to suit its current objectives").

Second, defendants argue that the orders extending federalization simply represent a continuation of the original June 7 federalization. Opp. 16. Plaintiffs anticipated the argument, *see* Mot. 19, and defendants still cite no authority for their view that the June 7 federalization order operates as an unconditional license to support all future deployments indefinitely. *Cf.* A-393 (Immergut, J.) ("To accept Defendants' arguments would be to render meaningless the extraordinary requirements of 10 U.S.C. § 12406[.]"). Nor do defendants provide any support for their extraordinary view that there is "no time limit on federalization." Opp. 14. As discussed above, *supra* p. 2, the text, structure, and history of the statute demonstrate otherwise. The Framers agreed that the States, not the federal government, would principally exercise control over the militia. *See, e.g.*, Vladeck, Note, *Emergency Power and the Militia Acts*, 114 Yale L.J. 149, 157 (2004). And the States continue to rely on their National Guards for a wide range of critical activities. *See, e.g.*, ER-73-76; Br. of Bipartisan Former Governors,

9

C.A. Dkt. 69.1 at 10-11, 18-20. Defendants' understanding would radically upset the balance of state and federal power by licensing the President to indefinitely conscript the States' Guard forces into federal service—even when the President no longer has a "good faith" basis to contend that any ground for federalization under Section 12406 exists. *Cf. Illinois*, 2025 WL 2886645, at *6, *21 (describing President Trump's repeated statements about deploying the Guard for ordinary law enforcement purposes and to "'stop crime'").

Third, defendants renew their argument, rejected by this Court, that claims under Section 12406 are nonjusticiable. Opp. 13. But defendants offer no reason for this Court to revisit that conclusion. *See, e.g.*, Answering Br. 35-40; *see also Illinois*, 2025 WL 2937065, at *5. A leading scholar in this area recently explained why *Martin v. Mott* does not render plaintiffs' claims nonjusticiable.[2] In doing so, he drew on arguments advanced in an amicus brief filed before this Court, *see* Br. of Constitutional Accountability Ctr., C.A. Dkt. 74.1, as well as a similar analysis of *Martin* provided by two other scholars.[3] *Martin* was a case involving sensitive foreign-affairs concerns, *see, e.g.*, Vladeck, *Bonus 183*, *supra*; an effort by a low-ranking member of the militia to collaterally attack the final verdict in a prior

---

[2] Vladeck, *Bonus 183: Martin v. Mott*, One First (Oct. 16, 2025), https://tinyurl.com/4btfztpe.

[3] Braver & Dehn, *Deference Due?*, The Volokh Conspiracy (Oct. 14, 2025), https://tinyurl.com/49kvcs9w.

10

court-martial proceeding years after a declared war, *see, e.g.*, Braver & Dehn, *supra*; and a request for civil damages at a time before the development of qualified-immunity doctrine, *see, e.g.*, Br. of Constitutional Accountability Ctr., C.A. Dkt. 74.1 at 12. None of those circumstances exists here.

Nor does *Luther v. Borden*, 48 U.S. (7 How.) 1 (1849), help defendants. *See* Opp. 13. *Luther*'s brief analysis of the Militia Act, *see, e.g.*, 48 U.S. (7 How.) at 42-44, was entirely bound up in the Court's principal holding that the President, not the judiciary, had responsibility for determining which of two competing factions represented the lawful governing authority in Rhode Island, *see id*. At the time, the relevant portion of the Militia Act authorized the President to federalize the militia only "upon the application of the legislature or of the executive" of the State in which an insurrection had arisen. *Id.* at 43. So resolution of the Militia Act question would have required the Court to weigh in on the question that it considered nonjusticiable: "what body of men constitute the legislature, and who is the governor." *Id.* This case does not require the Court to address anything remotely similar.

2. Defendants also have no persuasive response to the State's equitable arguments in favor of injunctive relief. Defendants acknowledge that the situation in Los Angeles has allowed them to "dramatically scale[] down the Guard's presence," "return[] most Guardsmen to state control," and to "limit[] the

11

remaining Guardsmen's activities." Opp. 17. Notably, they do not dispute that they planned to send all remaining federalized California Guardsmen to Oregon. *See* Mot. 8 (citing A-409). Defendants characterize their redeployment decisions as "an exercise of military judgment based on its assessment of optimal allocation of scarce resources." Opp. 22. But whatever terminology defendants prefer, their actions confirm they have no need for federal troops to avert harm in Los Angeles.

On the other side of the ledger, California's Guardsmen remain under federal control, intruding on the State's sovereign interests and imperiling democratic norms. *Supra* p. 6; Mot. 20-22. As the Seventh Circuit recently observed, "deploying Guard troops in the state over the state's objection 'constitutes proof of an irreparable harm.'" *Illinois*, 2025 WL 2937065, at *7. And the public has an unquestionable interest "in having only well-trained law enforcement officers deployed in their communities" and in "avoiding unnecessary shows of military force in their neighborhoods, except when absolutely necessary and justified by law." *Id.* at *8.

12

## CONCLUSION

The Court should vacate the June 19 order entering a stay of the district court's temporary restraining order, or, in the alternative, grant the motion for an injunction pending appeal.

Dated: October 20, 2025

Respectfully submitted,

*s/ Christopher D. Hu*

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
HELEN H. HONG
  *Principal Deputy Solicitor General*
THOMAS S. PATTERSON
MICHAEL L. NEWMAN
  *Senior Assistant Attorneys General*
CHRISTOPHER D. HU
  *Deputy Solicitor General*
ANYA BINSACCA
MARISSA MALOUFF
JAMES E. STANLEY
  *Supervising Deputy Attorneys General*
BRENDAN M. HAMME
BARBARA HORNE-PETERSDORF
MEGHAN STRONG
JANE REILLEY
  *Deputy Attorneys General*
HALEY L. AMSTER
  *Associate Deputy Solicitor General*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(D) and Local Rules 27-1(d) and 32-3 because it contains 2,792 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font.

**ADDENDUM**



OFFICE OF THE SECRETARY OF WAR
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

OCT 1 6 2025

MEMORANDUM FOR EXECUTIVE SECRETARY, DEPARTMENT OF HOMELAND SECURITY

SUBJECT: Request for Assistance for Security Support to U.S. Immigration and Customs Enforcement

    This memorandum responds to your request for assistance (RFA) of September 26, 2025 regarding security support to U.S. Immigration and Customs Enforcement in Oregon, in response to protests and threats of violence. I appreciate your collaboration and coordination in addressing this challenging situation.

    In response to your RFA and in accordance with Presidential direction, the Secretary of War has directed the extension of orders for all California (CA) National Guard (NG) units called into Federal service under 10 U.S.C. § 12406, from November 4, 2025 to February 2, 2026. The Secretary also has called 200 Texas (TX) NG into Federal service under 10 U.S.C. § 12406 with orders through December 4, 2025. These 200 CA NG and 200 TX NG personnel, along with additional headquarters and support staff, will deploy to Oregon effective immediately to protect Federal functions, personnel, and property, consistent with Secretary of War guidance to Commander, U.S. Northern Command, on a reimbursable basis. This footprint, 400 personnel, is the minimum required to protect Federal functions, personnel, and property in Oregon under current circumstances.

    We will continue to monitor the situation closely and coordinate with you and your staff to ensure the safety and security of all involved. I appreciate your reimbursing the Department of War for these efforts. Thank you for your continued partnership.

Anthony C. Fuscellaro
COL, USA
Executive Secretary

cc:
Secretary of the Army
Secretary of the Navy
Secretary of the Air Force
CJCS
USW(P)
USW(C)
USW(P&R)
USW(I&S)
NGB
ASW(LA)
Commander, U.S. Northern Command

A-455