

CALIFORNIA
**DEPARTMENT** OF **JUSTICE**

**Rob Bonta**
**Attorney General**

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 510-4400
Telephone: (415) 510-3877
Facsimile: (415) 703-5480
E-Mail: Meghan.Strong@doj.ca.gov

March 2, 2026

*Via ACMS*

Molly Dwyer, Clerk of Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

RE:   *Newsom v. Trump*, Nos. 25-3727, 25-7781

Dear Ms. Dwyer:

On February 19, 2026, during a hearing in *Illinois v. Trump*, No. 25-cv-12174 (N.D. Ill.), Defendants asserted that the district court could not grant summary judgment based on the Supreme Court's decision in *Illinois* because "[t]here's nothing in there related to the rebellion rationale, and we think that we would have to have a full record before the Court can make any findings as to that." Ex. A 6:6-13. Though Defendants asserted that *Illinois* is moot because "the rebellion is still about past events," Defendants did not assert that they are no longer invoking Section 12406(2) in defense of their actions. *Id.* 7:10-8:3. Defendants' position supports Plaintiffs' argument that this Court should decide the question whether Defendants were authorized to invoke Section 12406(2), an issue that was fully briefed by the parties in the pending appeal in Case No. 25-3727. *See* Dkt. 155.1 at 13, No. 25-3727; Dkt. 156.1 at 5, No. 25-3727; *see also Fikre v. FBI*, 35 F.4th 762, 771 (9th Cir. 2022) (case not moot where government failed to repudiate challenged legal views), *aff'd*, 601 U.S. 234 (2024).

In addition, it recently came to Plaintiffs' attention that the statement in their supplemental brief that Defendants' last-issued federalization order expired on February 2, 2026, was not accurate. Dkt. 155.1 at 7-8, No. 25-3727. Counsel learned of a later order that superseded the prior order. On November 25, 2025,

March 2, 2026
Page 2

Secretary Hegseth gave verbal orders, memorialized in a memorandum dated December 22, 2025, that the California National Guardsmen previously deployed in Oregon be redeployed to California.  Ex. B.  Secretary Hegseth further ordered that 150 California National Guardsmen remain in federal service through April 15, 2026.  Thus, as of December 22, Defendants intended to *increase* the number of California National Guardsmen deployed in California—from 100 to 150.  Defendants apparently reversed course only because this Court lifted the administrative stay of the district court's preliminary injunction on December 31.  Dkt. 24.1, No. 25-7781.  To date, Defendants have not brought the December 22 order to the Court's attention.

Sincerely,

*s/ Meghan H. Strong*
MEGHAN H. STRONG
Deputy Attorney General

For    ROB BONTA
Attorney General

# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   STATE OF ILLINOIS, a sovereign  )  Case No. 25 CV 12174
     state; and the CITY OF CHICAGO, )
 4   an Illinois municipal           )
     corporation,                    )
 5                                    )
                     Plaintiff,       )
 6                                    )
             v.                       )
 7                                    )
     DONALD J. TRUMP, in his          )
 8   official capacity as President   )
     of the United States;           )
 9   Department of Homeland          )
     Security; KRISTI NOEM, in her    )
10   official capacity as Secretary   )
     of the Department of Homeland    )
11   Security; DEPARTMENT OF          )
     DEFENSE; PETER B. HEGSETH, in    )
12   his official capacity as         )
     Secretary of the Department of   )
13   Defense; UNITED STATES ARMY;     )
     DANIEL P. DRISCOLL, in his       )
14   official capacity as Secretary   )
     of the Army,                     )  Chicago, Illinois
15                                    )  February 19, 2026
                     Defendants.      )  10:00 a.m.
16
                 TRANSCRIPT OF PROCEEDINGS - HEARING
17              BEFORE THE HONORABLE APRIL M. PERRY

18   APPEARANCES:

19   For the Plaintiff      OFFICE OF THE ILLINOIS ATTORNEY GENERAL
     State of Illinois:     ASSISTANT ATTORNEYS GENERAL
20                          BY:  MR. CHRISTOPHER WELLS
                                 MS. SARAH NORTH
21                          115 South LaSalle Street, 31st Floor
                            Chicago, Illinois 60603
22
     For the Plaintiff      CITY OF CHICAGO DEPARTMENT OF LAW
23   City of Chicago:       BY:  MS. CHELSEY METCALF
                            121 North LaSalle Street, Room 600
24                          Chicago, Illinois 60602

25
```

2

```
 1   APPEARANCES (Cont.'d):

 2
     For the Defendants:     U.S. DEPARTMENT OF JUSTICE
 3                           CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
                             BY:  MR. JOHN STEPHEN TAGERT
 4                                MR. IAN K. AZIMPOOR
                                  MS. JEAN LIN
 5                           950 Pennsylvania Avenue NW
                             WASHINGTON, D.C., 20530
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19
     Court Reporter:         NOREEN E. RESENDEZ, CSR, RPR, CRR
20                           Official Court Reporter
                             United States District Court
21                           219 S. Dearborn Street, Suite 1725
                             Chicago, Illinois 60604
22                           (312) 582-5267
                             Noreen_Resendez@ilnd.uscourts.gov
23

24                      *   *   *   *   *

25              PROCEEDINGS REPORTED BY STENOTYPE
        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

3

1      (Proceedings heard in open court, in part via telephone:)

2      THE CLERK: Calling case, 25 CV 12174, State of

3  Illinois, et al. versus Trump.

4      MS. NORTH: Good morning, Your Honor. Sarah North on

5  behalf of the State of Illinois.

6      MR. WELLS: Christopher Wells also on behalf of the

7  State.

8      MS. METCALF: Chelsey Metcalf, Your Honor, on behalf

9  of the City.

10      MR. TAGERT: Good morning, Your Honor. Stephen Tagert

11  here on behalf of the defendants. Jean Lin and Ian Azimpoor

12  have joined me on the phone.

13      THE COURT: All right. Good morning, everyone. So we

14  are up on a status. I had a couple things I wanted to talk

15  about. But do you all have anything to report first?

16      MS. NORTH: No, Your Honor. I don't think there's

17  anything to report, except that we recognize your status asked

18  us to speak about the partial summary judgment motion we intend

19  to file, so we're prepared to do that.

20      THE COURT: Anything on the defense side?

21      MR. TAGERT: No, Your Honor.

22      THE COURT: All right. So the mootness motion is

23  going to be fully briefed on March 17th, and as I said, I will

24  rule on that before addressing any summary judgment motion

25  because I have to ensure I have jurisdiction before I move on

4

1    to other matters.

2         With respect to the motion for summary judgement, you

3    know, obviously, it's supposed to depend on undisputed material

4    facts.  To the extent you have received court rulings in your

5    favor thus far, those have all allowed me to make credibility

6    findings, most of which were in your favor.

7         So you have law that is, I think, as good for you as

8    it could be but that law is largely based on a factual record

9    that made credibility findings that I'm not going to be able to

10   make in your favor on a motion for summary judgment, so I

11   didn't think that you had proceeded far enough in discovery to

12   get an evidentiary record of undisputed facts.  But you tell me

13   what facts are you planning to rely on as undisputed in support

14   of your motion?

15        MS. NORTH:  Your Honor, first of all, I just want to

16   point out that our motion is going to only deal with Count 1

17   and only deal with the Section 12406 claim.  And following the

18   Supreme Court statutory interpretation, we don't actually think

19   there's a disputed issue of fact about whether that statute was

20   satisfied and provided authority to the Trump administration to

21   invoke it, to do what they did in the various orders that we

22   went ahead and enjoined.  So the facts that are central to the

23   issue here about whether active duty U.S. military was involved

24   or even was considered are not at issue.

25        In terms of the discovery process, we do have written

5

1 discovery responses that we have received that I think resolve

2 any sort of small issues here or there.

3 THE COURT: So you have written discovery about

4 whether or not the regular forces were considered, were in any

5 way taken into account?

6 MS. NORTH: We do have written discovery about what

7 regular forces was interpreted to mean by the Trump

8 administration in one set of responses and in another set of

9 responses with respect to the president, we have a response

10 that is full objection to providing further information, thus

11 we proceed on the four corners of the documents that we -- that

12 were used here.

13 THE COURT: Okay. Now, you've mentioned the motion

14 for summary judgement would only be partial. If you win that

15 part, would you plan to dismiss the rest of the counts of the

16 complaint?

17 MS. NORTH: Correct. We'd seek to dismiss the rest

18 without prejudice, the Constitutional and Administrative

19 Procedure Act claims, we would not proceed on at all.

20 THE COURT: Okay. And have you spoken with the

21 defendants? My summary judgement procedure requires a joint

22 statement of undisputed fact. Have you all talked about how

23 long it would take for you to put your heads together and come

24 up with that?

25 MS. NORTH: We have not, Your Honor. We do recognize

1   that that would take some additional time.

2   THE COURT:  Okay.  Let me just ask the defendants a

3   couple of questions.  Obviously I would address the mootness

4   issue first, but if I did not find that the case was moot,

5   would you be planning to oppose the summary judgement motion?

6   MR. TAGERT:  Yes, Your Honor, we would.  We actually

7   don't think the case is as simple as plaintiffs make it out to

8   be.  It's not just a question of law at this point.  We think

9   that a full factual record would be needed and that's because

10  the Supreme Court's order was limited to the regular forces

11  rationale.  There's nothing in there related to the rebellion

12  rationale, and we think that we would have to have a full

13  record before the Court can make any findings as to that.

14  THE COURT:  I don't necessarily disagree, although

15  obviously I have not seen any briefs on it or facts at all yet.

16  But let me ask you this, your mootness argument relies on the

17  idea that this case -- and I'm quoting from your brief here,

18  "Could not proceed on the same facts given the Supreme Court's

19  ruling."  So I guess my question is, you seem to be arguing in

20  your mootness motion that between the facts as we know them and

21  the laws the Supreme Court has laid out that the answer is so

22  extremely obvious that the case has become moot.  So assuming

23  that that's your argument, how do you then oppose a motion for

24  summary judgement?

25  MR. TAGERT:  Yes, Your Honor.  We do think that the

1    case is moot. We think that everyone should moot out. We

2    don't think that there's any chance that anything will recur.

3    At some point -- and we're happy to address mootness more so at

4    a later date.

5         Our brief, though, does not focus on the rebellion

6    rationale, and we don't think that there has been any orders on

7    it. But as we say, we do think that the facts in the Supreme

8    Court's order had made it so that the same orders would not go

9    out -- excuse me -- at this point.

10        THE COURT: But I guess that's where I'm struggling

11    and, obviously, we need full briefing on the mootness issue.

12    But where it could be helpful for you to focus on your reply

13    is, to the extent rebellion is still a live issue both under

14    the facts and the law, how could the case be moot? I mean, you

15    just told me that you think there are perhaps facts and law

16    that would justify this particular deployment. I know we were

17    not meant to argue this today, and I'm not trying to hold your

18    feet to the fire on it. That is something that is troubling to

19    me, just for future briefing purposes.

20        MR. TAGERT: Certainly, Your Honor. And we're happy

21    to address that in our briefing.

22        THE COURT: Great.

23        MR. TAGERT: Because the rebellion is still about past

24    events, and I think that's the thing. We -- it is not -- I

25    don't think there's a question at this point that the case is

8

1   moot.  It is more so, you know, whether there's an exception

2   that applies; and we're happy to address the rebellion point in

3   our reply brief on that.

4       THE COURT:  Great.  All right.  So given the state of

5   the factual record, given what I'm asking you, the joint

6   statement of undisputed facts, do you want at this moment to

7   set a briefing schedule or do you want to go back, consult, and

8   then propose something?

9       MS. NORTH:  We'll confer with the defendants if that's

10  all right.  I think that would make more sense since I don't

11  know anything about their schedule and we'll have to agree with

12  them on hopefully most of the facts, if not all of them.

13      THE COURT:  Okay.  Well, obviously, you can file it

14  under the rules at any time, so once you have your ducks in a

15  row, you can go ahead and submit to me a proposed briefing

16  schedule.

17      In the meantime I'll just be waiting on the mootness

18  briefing to conclude and I will try to rule on that in

19  relatively short order once it is.

20      MS. NORTH:  Thank you, Your Honor.

21      THE COURT:  Anything else from the defense side?

22      MR. TAGERT:  Nothing further, Your Honor.

23      MS. NORTH:  Your Honor, sorry.  There is one more

24  thing.  We have currently from Judge Gilbert a stay of

25  discovery through March 18th.  Do we need to ask him to extend

9

1    that further so that these matters can be resolved?

2              THE COURT:  It probably would make sense.  I can't do

3    it for him.

4              MS. NORTH:  I see.

5              THE COURT:  So you would probably need to raise that

6    with him.  I suspect he gave you that date to allow time for

7    the mootness motion to be fully briefed.  So I would say motion

8    it up relatively close in time to the 17th so that I can take a

9    look at that and then consult with him about what timing I

10   would be proceeding under.

11             MS. NORTH:  Okay.  We'll do that.  Thank you, Your

12   Honor.

13             THE COURT:  Great.  Thanks, everyone.

14             MR. TAGERT:  Thank you, Your Honor.

15        (Concluded at 10:11 a.m.)

16                       *   *   *   *   *

17     I certify that the foregoing is a correct transcript from the

18   record of proceedings in the above-entitled matter.

19

20   _/s/Noreen E. Resendez_              _February 25, 2026_
     Noreen E. Resendez                  Date
21   Official Court Reporter

22

23

24

25

10

# EXHIBIT B



**SECRETARY OF WAR**
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

DEC 2 2 2025

MEMORANDUM FOR SECRETARY OF THE ARMY
                           SECRETARY OF THE AIR FORCE
                           CHIEF OF THE NATIONAL GUARD BUREAU
                           COMMANDER, U.S. NORTHERN COMMAND

SUBJECT: Force Structure Decisions for the Presidentially Directed Mission to Protect Federal Law Enforcement Personnel and Functions in Illinois and Oregon

At the direction of the President, I called California, Illinois, Oregon, and Texas National Guard units into Federal service under 10 U.S.C. § 12406 to temporarily protect U.S. Immigration and Customs Enforcement and other U.S. Government personnel who are performing Federal functions and to protect Federal property, at locations where violent demonstrations prevent the execution of federal law or are likely to prevent the execution of federal law based on current threat assessments and planned operations.

Given ongoing domestic unrest, on November 25, 2025, I verbally authorized the following actions:

- Redeploy the California National Guardsmen now deployed in Oregon to California. Of the 300 total California National Guardsmen, 150 have volunteered to remain in Federal service. Their orders will be extended through April 15, 2026. The remaining 150 California National Guardsmen will be demobilized.

- Demobilize 100 of the 200 Oregon National Guardsmen now deployed in Oregon. The remaining 100 are extended on orders to support this enduring mission, with an initial extension to April 15, 2026.

- Redeploy the Texas National Guardsmen now deployed in Illinois to Texas. Of the 400 total Texas National Guardsmen, 200 have volunteered to remain in Federal service. Their orders will be extended through April 15, 2026. The remaining 200 Texas National Guardsmen will be demobilized.

- All 300 Illinois National Guard personnel will remain in Federal service, with an initial extension of their orders to April 15, 2026.

I appreciate the hard work of our Service members in the protection of our Nation and of the rule of law.

*PBJh*

cc:
CJCS
USW(P)
USW(P&R)



OSD014101-25/CMD017807-25